RAISANEN, Appellant, v. CITY OF MILWAUKEE, Respondent.

*May 12—June 6, 1967.*

506

For the appellant there was a brief by *E. Campion Kersten* and *Martin J. Torphy,* both of Milwaukee, and oral argument by *Mr. Kersten.*

For the respondent there was a brief by *John J. Fleming,* city attorney, and *Herbert F. Sonnenberg,* assistant city attorney, and oral argument by *Mr. Sonnenberg.*

CURRIE, C. J.   The following three issues are presented by this appeal:

(1)   Does the complaint state a cause of action in negligence?

(2)   Does the complaint state a cause of action in nuisance?

(3)   Is the complaint demurrable because of the failure to allege compliance with the notice requirement of sec. 81.15, Stats.?

*Negligence.*

The essence of plaintiff's theory is that Harriet Topping and Melvin Gere relied upon their respective signals permitting them to proceed and thus became "entrapped" in the intersection where the accident occurred, and that the city was negligent for so programming the traffic control signals to permit both vehicles to be in the intersection as they were at the time of the collision.

The issue posited with respect to the alleged negligent programming of the traffic control signals appears to be one of first impression in this jurisdiction. In resolving the issue the following statutes and administrative rules are relevant and merit consideration.

Sec. 349.08 (1) and (2), Stats., provides:

"(1) The state highway commission shall adopt rules for the design and installation of stop and yield signs and for the design, installation and *operation* of traffic control signals where these signs and devices are permitted by statutes. . . . (Italics supplied.)

"(2) No stop sign, yield sign or traffic control signal shall be installed unless the design, installation and use or *operation* of such sign or signal conforms to the rules of the state highway commission." (Italics supplied.)

The rules of the state highway commission are found in 2 Wis. Adm. Code, Highways. Sec. 21.05, "Operation of traffic control signals and application of color and arrow indication," insofar as it is relevant to this appeal, provides:

"(1) (b) A yellow vehicle-clearance interval shall be used following each green interval and, where applicable, after each green arrow interval. . . .

"(1) (e) A circular green indication shall be given only when it is intended to permit traffic in each lane to proceed in any direction which is lawful and practical for traffic in those lanes. . . .

"(1) (h) Every circular green indication shall be followed by a steady circular yellow clearance interval and

every green arrow indication shall be followed by a steady circular yellow or yellow arrow vehicle-clearance interval *except* following a green arrow when the related movement is permitted to continue by the accompanying or immediately forthcoming display of the circular green indication." (Italics supplied.)

The light sequence governing eastbound and left-turning traffic in the position of the Topping vehicle was as follows:

1. Red for all movements;
2. Circular green plus green left-turn arrow;
3. Green arrow ends, circular green remains on.

It is patently clear that the foregoing sequence conformed to the established rules of the highway commission and plaintiff so concedes. Plaintiff, however, argues that an alternative authorized sequence should have been adopted which he claims would have been more appropriate and less hazardous. He suggests:

(1) That there could and should have been an interval between the green arrow permitting eastbound traffic to turn left or north and the change of the light governing westbound traffic from red to green; or

(2) that the left-turn arrow could have been shown at the end of the green light sequence for eastbound and left-turning traffic, after the light for westbound traffic had changed to red.

The highway commission rules are silent on the interaction of lights governing traffic from opposite directions. Nothing in the rules, as previously noted, however, prohibits the simultaneous ending of a green left-turn arrow and changing of the light governing traffic from the opposite direction to green.

If this court determines the complaint alleges actionable negligence on the part of the city of Milwaukee, such determination will have to be predicated on a breach of the common-law duty of ordinary care. Plaintiff in developing his argument on the foregoing basis appears to over-

emphasize the right of motorists to proceed as did the Topping vehicle on the left-turn arrow and Gere on the green light. Plaintiff characterizes the right to proceed in terms of an absolute right. In this respect the following provisions of sec. 346.37, Stats., are of significance. Sec. 346.37 (1) (a) 1, which is applicable to the Gere motorcycle, provides:

"Vehicular traffic facing a green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn, but vehicular traffic *shall yield the right of way to other vehicles* . . . lawfully within the intersection . . . at the time such signal is exhibited." (Italics supplied.)

Sec. 346.37 (1) (d) 1, Stats., which is applicable to the Topping vehicle, provides:

"Vehicular traffic facing a green arrow signal may enter the intersection only to make the movement indicated by such arrow *but shall yield the right of way to* . . . *traffic lawfully using the intersection.* When the green arrow signal indicates a right or left turn traffic shall *cautiously* enter the intersection." (Italics supplied.)

Plaintiff has not cited any decisions in support of the proposition that programming traffic signals in a certain manner is actionable negligence and we have found none. *Weiss v. Fote,*[1] a New York court of appeals decision, is perhaps most analogous to the case at bar. In that case an action was commenced against the city of Buffalo and others for injuries and damage arising out of an intersectional collision allegedly caused by traffic control signals negligently designed in that the "clearance interval" between the red and green signal was too short with

[1] (1960), 7 N. Y. (2d) 579, 200 N. Y. Supp. (2d) 409, 167 N. E. (2d) 63. The decision is cited in 4 Blashfield, Automobile Law & Practice, p. 333, sec. 161.17; 18 McQuillin, Mun. Corp. (3d ed.), p. 236, sec. 53.42 and Note, 46 Cornell Law Quarterly (1960), 366.

the result that east-west traffic was "green lighted" before all the north-south traffic had cleared the intersection. There were no green arrow signals for turning vehicles. The city was held not liable. Judge FULD, speaking for the court, stated:

"Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government—for instance, the garden variety injury resulting from the negligent maintenance of a highway—but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question. . . . To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that 'the king can do no wrong', serves only to give expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute." [2]

It should, however, be noted that the court in *Weiss v. Fote, supra,* placed much reliance upon the fact that extensive planning had been undertaken with respect to the traffic control signals in question.

In 18 McQuillin, Mun. Corp. (3d ed.), page 236, sec. 53.42, the following statement appears:

"In those jurisdictions which hold a municipality liable for the negligent performance of its governmental functions, negligence in the operation or maintenance of traffic signs and signals is actionable, but the municipality is not liable for an improper interval in the traffic lights

[2] *Supra,* footnote 1, at page 585.

which was the result of lawfully authorized municipal planning."

It is clear that a city or other governmental subdivision may under certain circumstances be found actionably negligent in the maintenance of traffic signs and traffic control signals. For example, in *Firkus v. Rombalski* [3] this court held the trial court was correct in deciding as a matter of law that a town was negligent where the town had had actual knowledge that a stop sign had been removed by vandals nineteen days before a two-car accident at the intersection, and had failed to act without unreasonable delay in replacing the sign or in taking other precautions by warning or temporary signs to inform the traveling public of danger resulting from the removal of the sign.

In *Johnston v. East Moline* [4] an action was commenced against the city to recover for injuries and death sustained as the result of an intersectional collision allegedly caused because the city removed a damaged traffic light at a busy intersection but continued to operate the remaining lights for five days before the accident. The accident occurred when the Johnston automobile, relying on the green light, was struck by another automobile, the driver of which entered the intersection from the direction unprotected by any light. The court held the city was actionably negligent in leaving the intersection partly controlled and partly uncontrolled by traffic signals.

Both *Firkus* and *Johnston* are distinguishable from the case at bar in that both involved conditions of disrepair or actual physical defects. The motorists in each case because of the absence of a previously erected traffic control sign or signal were invited into the intersection where the accidents occurred. This is manifestly different

---

[3] (1964), 25 Wis. (2d) 352, 130 N. W. (2d) 835.
[4] (1950), 405 Ill. 460, 91 N. E. (2d) 401.

from a case, such as the instant case, where the movement of both motorists was controlled, but both sought to exercise an absolute right to proceed. As previously noted, the applicable statutes confer only a qualified, not an absolute right to proceed. This is particularly true with respect to Gere who was bound to yield the right-of-way to Topping who had commenced her left turn within the intersection before Gere entered the intersection.

This appeal concerns primarily the city's decision in programming its traffic control signals which decision conformed in all respects to the statutes and the rules of the highway commission, and which decision involved the choice of lawfully authorized alternatives. We fully concur with the rationale expressed by the New York court of appeals in *Weiss v. Fote, supra,* that lawfully authorized programming of signal lights by a city should not give rise to tort liability by a jury second-guessing the reasonableness and safety of the plan. Therefore, we hold the complaint fails to state a cause of action in negligence.[5]

### Nuisance.

Plaintiff added nothing to the sufficiency of the complaint by his allegations of nuisance. As this court pointed out in both *Schiro v. Oriental Realty Co.*[6] and *Walley v. Patake*[7] nuisance is grounded on either negligent or intentional conduct. Here the claimed nuisance is grounded on alleged negligent conduct of the city. It

[5] Plaintiff contends that, because this court in *Firkus v. Rombalski,* cited the dissent in *Weiss v. Fote* we are committed to the reasoning of that dissent. This is an erroneous conclusion. The dissent was only cited in *Firkus* for the principle that failure to maintain a traffic sign may give rise to a cause of action against a municipality.

[6] (1956), 272 Wis. 537, 546, 76 N. W. (2d) 355.

[7] (1956), 271 Wis. 530, 541, 74 N. W. (2d) 130.

necessarily follows that if there was no negligence there was no nuisance.

*Failure to Comply with Sec. 81.15, Stats.*

Any defect in the maintenance or operation of traffic control signals necessarily constitutes a highway defect within the meaning of sec. 81.15, Stats., under our holding in *Firkus v. Rombalski.*[8] This statute in part provides:

"No . . . action [to recover damages for a highway defect] shall be maintained unless within 120 days after the happening of the event causing such damages, notice in writing signed by the party, his agent or attorney shall be given to the . . . mayor or city clerk of the city against which damages are claimed, stating the place where such damages occurred, and describing generally the insufficiency or want of repair which occasioned it and that satisfaction therefor is claimed of such . . . city or village."

The amended complaint does not allege that plaintiff gave such written notice within the prescribed one-hundred-twenty-day period. The giving of such notice is a condition precedent to recovery.[9] Compliance with conditions precedent to a right of action must be alleged. In the absence of such allegation a demurrer to the complaint should be sustained.[10]

After the decision in *Holytz v. Milwaukee*[11] the 1963 legislature enacted sec. 895.43 (formerly sec. 331.43),

[8] *Supra*, footnote 3.

[9] *Ocampo v. Racine* (1965), 28 Wis. (2d) 506, 510, 137 N. W. (2d) 477. *Stippich v. Milwaukee* (1967), 34 Wis. (2d) 260, 270, 149 N. W. (2d) 618, specifically holds the notice requirements of sec. 81.15, Stats., apply even to the common-law liability of a municipality for failure to remove snow and ice from a sidewalk.

[10] *Foreway Express, Inc., v. Hilbert* (1966), 32 Wis. (2d) 371, 145 N. W. (2d) 668; *Boden v. Maher* (1897), 95 Wis. 65, 69 N. W. 980; *Steltz v. Wausau* (1894), 88 Wis. 618, 60 N. W. 1054.

[11] (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618.

Stats.[12] Plaintiff contends that sec. 895.43 which contains the proviso that failure to give the one-hundred-twenty-day notice shall not constitute a bar to an action if the municipal corporation had actual notice of the injury and sustained no prejudice, is applicable and saves the amended complaint from demurrer. However, sec. 895.43 is a general statute applicable to all tort claims against a municipality while sec. 81.15 is a specific statute governing tort claims based on highway defects. It is a cardinal rule of statutory construction that when a general and specific statute relate to the same subject matter, the specific statute controls.[13]

Conflicts between different statutes are not favored and will not be held to exist if they may otherwise be reasonably construed.[14] In attempting to apply this principle to the notice requirement of secs. 81.15 and 895.43 Stats., we are unable to perceive a basis of construction which will remove the conflict which results from inclusion of the aforenoted proviso in sec. 895.43. Therefore, we are forced to invoke the rule that, where a specific statute conflicts with a general statute, the former must control.

*By the Court.*—Order affirmed.

[12] Sec. 895.43, Stats., provides: "No action founded on tort . . . shall be maintained against any . . . political corporation . . . unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury or damage signed by the party, his agent or attorney is served on such . . . political corporation . . . under s. 262.02. Failure to give the requisite notice shall not bar action on the claim if the . . . corporation . . . had actual notice of the damage or injury and the injured party shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant . . . corporation . . . ."

[13] *Wauwatosa v. Grunewald* (1962), 18 Wis. (2d) 83, 118 N. W. (2d) 128; *Pruitt v. State* (1962), 16 Wis. (2d) 169, 114 N. W. (2d) 148; *Maier v. Racine County* (1957), 1 Wis. (2d) 384, 84 N. W. (2d) 76.

[14] *Moran v. Quality Aluminum Casting Co.* (1967), 34 Wis. (2d) 542, 150 N. W. (2d) 137.