JORGENSON, Plaintiff and Respondent, v. NORTHERN STATES POWER COMPANY, Defendant and Third-Party Plaintiff and Respondent: CITY OF LA CROSSE, Third-Party Defendant and Appellant.

*No. 354. Argued June 4, 1973.—Decided June 29, 1973.*
(Also reported in 208 N. W. 2d 323).

32

For the appellant there were briefs by *Edwards, Hafner & McDonald, Ltd.*, of La Crosse, and oral argument by *Roger W. Hafner*.

For the plaintiff-respondent there was a brief by *Hale, Skemp, Hanson, Schnurrer & Skemp*, of La Crosse, and oral argument by *William P. Skemp*.

For the defendant-respondent there was a brief by *Robert D. Johns* and *Johns, Flaherty, Harman & Gillette, S. C.*, all of La Crosse, and oral argument by *Robert D. Johns*.

ROBERT W. HANSEN, J.    We begin by holding that the acts of both city and power company causally contributed to the personal injuries sustained by the plaintiff and both were properly found negligent. This we do not do to reward those who begin at the beginning in reading appellate court opinions, nor to puzzle those who turn first to the final paragraphs of the opinion to determine what result was reached. We do so to make clear that, as to the appeal of the city and notice

of review of the power company, we apply the substantial-factor concept of causation, under which there may be several substantial factors contributing to the same result.[1] We agree with the jury and trial court in this case that acts and failures to act on the part of the city and on the part of the power company were exactly such substantial contributing factors to the light pole's falling on the plaintiff. Affirmance follows but, nonetheless, we will deal with each of the points raised by each of the defendants in this action.

*Duty of the city.*

Basically, the city contends that it should not have been held negligent because it had no "duty" to authorize the removal of the pole by the power company. It is true that no provision of the contract between the city and the power company provided for city approval being required for the removal of a light pole. However, the trial court found that "over the years there had developed the practice and understanding between the City and Northern States that it [the power company] did not temporarily remove any of the poles unless it was authorized by the City Engineer." Additionally, the trial court held that "force and effect must be given to

[1] *See: Blashaski v. Classified Risk Ins. Corp.* (1970), 48 Wis. 2d 169, 174, 175, 179 N. W. 2d 924, stating: ". . . The doctrine of proximate cause in the strict sense of that term has been abandoned for the substantial-factor concept of causation to properly express 'legal cause' or 'cause.' . . . Consequently, there may be several substantial factors contributing to the same result. The contribution of these factors under our comparative negligence doctrine are all considered and determined in terms of percentages of total cause." Citing *Osborne v. Montgomery* (1931), 203 Wis. 223, 226, 234 N. W. 372; *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. 2d 29.

the custom and understanding which had arisen over the years in carrying out this contract."

The trial court correctly located and applied the basic rule of law that " 'There is no surer way to find out what parties meant, than to see what they have done. . . .' " [2] The intention of the parties to any particular transaction " '. . . may be gathered from their acts and deeds, in connection with surrounding circumstances, as well as from their words. . . .' " [3] Another way of stating the same rule is that, when the language of a contract is not clear and is ambiguous, ". . . the practical construction given to it by the acts of the parties is of 'great force' or 'entitled to great weight,' " [4] and, under such circumstances, ". . . the court ordinarily will place the interpretation upon the terms of the contract which the parties in the course of their dealings have adopted. . . ." [5] It is not the written words of the contract (for they are silent on the question), but rather the acts and dealings between the city and the power company that make clear that the permission of the city engineer was required for the power company's removal of the pole that fell. It is as clear that the failure to respond or give permission for such removal was the sole reason the power company did not remove it prior to the accident. Such failure to act on the part of the

---

[2] *Insurance Co. v. Dutcher* (1877), 95 U. S. 269, 273, 24 L. Ed. 410, quoted with approval in *H. & R. Truck Leasing Corp. v. Allen* (1965), 26 Wis. 2d 158, 161, 131 N. W. 2d 912.

[3] *Estate of Grossman* (1947), 250 Wis. 457, 461, 27 N. W. 2d 365, quoting *Tyler v. Burrington* (1876), 39 Wis. 376, 379.

[4] *Cutler-Hammer, Inc. v. Industrial Comm.* (1961), 13 Wis. 2d 618, 632, 109 N. W. 2d 468, quoted with approval in *Martinson v. Brooks Equipment Leasing, Inc.* (1967), 36 Wis. 2d 209, 219, 152 N. W. 2d 849, 154 N. W. 2d 353.

[5] *Id.* at page 632.

city certainly was a substantial factor in the plaintiff's being injured, and for such failure to act the city was properly held to have been causally negligent.

*Governmental immunity.*

Secondarily, the city contends that even if it was causally negligent in failing to give permission for the removal of the light pole, it cannot be held liable for the reason that such inaction falls within the realm of legislative or judicial discretion to which governmental immunity from liability still applies. When the doctrine of governmental immunity in this state was abrogated, both as to acts of commission and omission,[6] this court made clear that its decision was not to be interpreted "as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions."[7] So the question is presented as to whether the city engineer's failure to act on the power company's request to remove the pole was an exercise of a legislative or judicial function, or quasi-so.

Since *Holytz,* this court has several times dealt with the issue of whether a particular claim against a municipality fell within the rule of liability, or the exception to it of continued immunity for exercise of legislative or judicial functions. In the first such, governmental immunity was held not to bar an action against a town for negligently failing to replace a stop sign removed by vandals even though the town had no duty to erect the sign in the first place.[8] In the second, governmental

---

[6] *Holytz v. Milwaukee* (1962), 17 Wis. 2d 26, 39, 115 N. W. 2d 618, this court stating: "Perhaps clarity will be afforded by our expression that henceforward, so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity. . . ."

[7] *Id.* at page 40.

[8] *Firkus v. Rombalski* (1964), 25 Wis. 2d 352, 130 N. W. 2d 835.

immunity was held to bar an action based on claim of error in a city's programming of a traffic signal.[9] In the third, a failure to erect a warning signal on a highway was held to be an exercise of a legislative function to which governmental immunity applied.[10] In the most recent, it was held that while an action based on a decision to place or not place a warning sign near an intersection was barred by governmental immunity, if the sign was placed in such a manner that it did not comply with the highway commission directive, a claim of negligence against the city was not barred.[11] For our purposes here, it is enough to note that these cases deal with whether or not the placing of warning or traffic control signals on highways is or is not an exercise of a legislative or quasi-legislative function.

The issue in the case before us relates to the control of the light pole as between the city and the power company. If this had been a city light pole, and notice was given to the city engineer that unless it was temporarily removed it might topple and kill one of the workmen digging the ditch for the city near its base, it is difficult to see what would be legislative or quasi-legislative about the city's failing to remove its pole so that its excavating project could proceed without danger to the workmen involved. The agreement between the city and power company, whereby the company maintained the pole and needed city permission to remove it, adds nothing either legislative or judicial to the situation. We find no relatedness to a legislative or judicial function in the city's failure to authorize removal of a light pole temporarily while a trench was being dug alongside it. Governmental immunity for the exercise of a legislative or judicial

---

[9] *Raisanen v. Milwaukee* (1967), 35 Wis. 2d 504, 151 N. W. 2d 129.

[10] *Dusek v. Pierce County* (1969), 42 Wis. 2d 498, 167 N. W. 2d 246.

[11] *Chart v. Dvorak* (1973), 57 Wis. 2d 92, 203 N. W. 2d 673.

function cannot be stretched to reach the act of omission here involved.

*Negligence of power company.*

The notice of review challenges the jury finding that the power company was causally negligent. If it needed city permission to remove the light pole, the company contends it is the city, not the power company, that alone is responsible for the pole's not being removed. That is true enough, but the trial court in upholding the jury finding of power company negligence found a legal obligation on the part of the power company to have taken "more effective steps" to prevent plaintiff's injury. The reference is not to removal of the pole. Temporary removal of the pole was not the only way in which the risk of injury could have been minimized. One alternative was selected by the power company, to wit: butt-guying the pole to render it more secure. An alternative to such alternative, the city points out in its reply brief, would have been for the company to utilize its motor equipment to support the pole while excavating work was going on. Such additional precautionary measure would have, at the least, lessened the likelihood of the pole toppling over, the cause of plaintiff's injury. The agreement with the city did not prevent or block the power company taking "more effective steps," short of removal of the pole, to guard against its toppling over. It alone could perform any physical act in relation to the pole in question. The trial court's upholding the jury verdict finding the power company causally negligent is affirmed, its failure being that of failing to do more than butt-guying to secure the pole it needed city permission to remove.

*Jury instructions.*

Tersely, almost without comment or supportive argument, the city alleges two errors in the jury instructions

as given by the trial court. One relates to the standard of care required of the power company in maintenance of the pole, an aspect of the case fully and correctly covered by the instructions given by the trial court. The second relates to the standard of care of the city. Review of the requested instruction indicates that it related primarily to the applicability of governmental immunity. We have upheld the trial court ruling that the act of omission on the part of the city was not protected by the doctrine of governmental immunity for performance of a legislative or judicial function. This was a matter of law for the court to determine, and the requested instruction was properly refused.

*By the Court.*—Judgment affirmed.