LANGE, Appellant, v. TOWN OF NORWAY, Respondent.

*No. 75–413. Submitted on briefs March 30, 1977.—*
*Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 240.)

314

For the appellant the cause was submitted on the brief of *Lepp & Lepp* of Kenosha.

For the respondent the cause was submitted on the brief of *Foley & Capwell, S. C.* of Racine.

ROBERT W. HANSEN, J.   With the appeal here from the trial court order sustaining the demurrer of the town to the complaint of the plaintiff, focus is on the allegations of that complaint and the cause of action pleaded.

The town acquired a dam at the outlet of Wind Lake from the previous private owners in 1970, with the state department of natural resources approving the transfer. The complaint of the plaintiff alleges that, "from the time of the transfer of the dam to the defendant," the town "unlawfully and wrongfully" kept and maintained said dam so as to cause, "during the month of September, 1972," waters to overflow on to the property of plaintiff, damaging growing crops.   In order to determine the basis of the cause of action alleged, we will separate—as the complaint does not—the allegations of illegality and wrongful maintenance of the dam acquired.

The claim of "unlawful" maintenance of the dam at the outlet of the lake rests upon two orders of the DNR, both

attached as exhibits to the complaint. The first, dated March 10, 1971, reaffirmed maximum and minimum lake levels and ordered the town to submit plans and construct a new or replacement dam by August 15, 1971. The second order, dated April 4, 1972, declared the existing dam structure to be unsafe and dangerous, and ordered the town to complete a replacement dam by September 15, 1972.

The complaint is puzzlingly obscure as to whether the flooding occurred before or after the completion date set by the DNR. The plaintiff alleges only that the flooding took place at some time "during the month of September, 1972." Thus the claim of liability for illegal maintenance of the old dam appears to be that the town is liable to the plaintiff because it failed to comply with the DNR orders. That does not follow. This is not an action to enforce a DNR order for construction of a new dam.

As the trial court stated in granting demurrer: "[I]f the plaintiff felt himself aggrieved in the progress of the dam replacement work, he might have availed himself of remedies before the Department of Natural Resources whose jurisdiction had been invoked and continued with respect to the project." To recover here, the plaintiff must plead and prove the duty owed to him by the town, a breach of that duty owed and consequential damages resulting therefrom. While failure to comply with the DNR dam replacement order might have evidentiary value, it does not constitute negligence per se and does not, even if it were here sufficiently pleaded, constitute a cause of action.

On appeal, plaintiff's brief says nothing about the alleged "illegality" of maintenance of the dam, about which the complaint had much to say. Instead, plaintiff in his brief contends that the complaint, if liberally construed,

states a cause of action for negligence in the maintenance and operation of the existing dam structure. The rule is that, on demurrer, complaints are to be liberally construed.[1] A complaint withstands demurrer if it ". . . expressly, or by reasonable inference, states any cause of action."[2]

A finding that a cause of action for negligence is stated from the allegations of this complaint would have to rest upon the allegation in the complaint that the town "wrongfully" maintained and operated the existing dam structure. In the complaint, as the trial court pointed out in its decision, "It is not alleged that the situation arose by any negligence. . . ." It is hard to quarrel with that conclusion.

As used here, "wrongfully" is hardly a synonym for "negligently." Thus, as the complaint is presently constituted, we find no cause of action stated for negligence. However we do not specifically hold that the complaint could not so state a cause of action if it is properly amended. Accordingly, we will grant leave for plaintiff to replead his complaint and will now move on to consider the possible parameters of a properly pleaded negligence cause of action.

As to a cause of action for negligence in acquisition and maintenance of this dam and construction of a new dam, the position of the town is that any such action is barred by statute. The statute referred to and relied upon, sec. 895.43, provides that no suit shall be brought against a governmental subdivision for ". . . the intentional torts of its officers, officials, agents or employees," or for acts done by them ". . . in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."[3]

---

[1] Sec. 263.27, Stats.

[2] *Jennaro v. Jennaro*, 52 Wis.2d 405, 409, 190 N.W.2d 164 (1971).

[3] Sec. 895.43, Stats., was enacted in response to this court's decision in *Holytz v. Milwaukee*, 17 Wis.2d 26, 115 N.W.2d 618

As to the acquisition of the existing dam and construction of a new dam, these are clearly legislative functions under the statute. As to the maintenance of the dam acquired, the town contends this is no more than the manner in which the town proceeds with its legislative function, and therefore the plaintiff has no right in the manner in which defendant carries out its legislative function.

Such claim that there can be no duty owed or breached by a municipality in the day-to-day operation of a dam and floodgates in the dam requires review of those cases dealing with municipal immunity decided subsequent to enactment of sec. 895.43, Stats.

In the first such, the *Firkus Case*,[4] where a town negligently failed to replace a stop sign removed by vandals, governmental immunity was not found. While the town had no duty to erect the sign in the first place, ". . . once it undertook to erect it, its failure to replace it would be negligence as a matter of law if the town had sufficient notice to remedy the situation."[5]

In the second such, the *Raisanen Case*,[6] involving a claim of negligence in the programming of a traffic signal sequence for stop-and-go lights, governmental immunity was held to bar the action. *Firkus* was distinguished as involving ". . . conditions of disrepair or actual physical defects" where the motorist was invited into the intersection where the accident occurred.[7]

Next, in the *Dusek Case,* the court found governmental immunity as to ". . . whether or not to place a stop

(1962), which abolished tort immunity for municipalities. The court stated at 40: "This decision is not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions."

[4] *Firkus v. Rombalski*, 25 Wis.2d 352, 130 N.W.2d 835 (1964).
[5] *Id.* at 359.
[6] *Raisanen v. Milwaukee*, 35 Wis.2d 504, 151 N.W.2d 129 (1967).
[7] *Id.* at 513.

sign, a warning sign, or a yield sign at the approach to a county trunk highway. . . .''[8] Although there is a *Firkus* duty to maintain signs once they are placed, the court held ''. . . there is no duty upon the legislative body of a government to place them at a highway intersection in the first place.''[9]

Subsequently, in the *Chart Case,* governmental immunity was held to immunize from liability the decision whether or not to place a warning sign near an intersection, but, once the decision to place the highway warning sign had been made, the municipality ''. . . had a duty to place it and maintain it without negligence.''[10]

Finally, in the *Jorgenson Case,* no governmental immunity was found as to ''. . . the city's failure to authorize removal of a light pole temporarily while a trench was being dug alongside it,''[11] our court there further holding: ''Governmental immunity for the exercise of a legislative or judicial function cannot be stretched to reach the act of omission here involved.''[12]

Applying the rule of these traffic control cases to the maintenance of the dam at the outlet of the lake by this town, we find something less than a grant of complete governmental immunity in the maintenance and operation of the dam, and particularly its floodgate. The complaint of plaintiff makes reference to the "inadequate flood gate" of the dam acquired by the town.

If, as well may be the case,[13] this is no more than a reference to the size of the dam acquired and the capacity

---

[8] *Dusek v. Pierce County,* 42 Wis.2d 498, 506, 167 N.W.2d 246 (1969).

[9] *Id.* at 506.

[10] *Chart v. Dvorak,* 57 Wis.2d 92, 101, 203 N.W.2d 673 (1973).

[11] *Jorgenson v. Northern States Power Co.,* 60 Wis.2d 29, 37, 208 N.W.2d 323 (1973).

[12] *Id.* at 37 and 38.

[13] Exhibit A, attached to plaintiff's complaint, setting forth findings of the Department of Natural Resources, as contained

of its floodgate, governmental immunity would apply to acquisition of the structure by the town. However such governmental immunity would not include a failure to maintain as to a condition of disrepair or defect or a failure to properly operate said floodgate. In finding that negligence was not alleged in the complaint here, the trial court added, ". . . nor does it seem that such allegations could be effectively made in connection with the existing factual situation." That may well turn out to be the situation here, but, from this complaint as drafted, we cannot now be sure that it is.

On appeal, in addition to claiming a cause of action for negligence, plaintiff asserts that a separate and independent cause of action is alleged against the town for maintaining a nuisance. The reference is to the allegation in the complaint that the dam as maintained was unsafe and dangerous ". . . and as such was a public nuisance."

The statutes in this state permit an action for damages for abatement of a public nuisance.[14] Such claimed maintenance of a public nuisance can be grounded on

---

in its order of October 29, 1970, permitting acquisition by the town of the existing dam structure, including: "Increased urbanization and increased farm use of the drainage basin has resulted in a much larger and faster runoff of flood waters than those which occurred at the time the Wind Lake Dam was constructed. [*Note*, in 1905] . . . The dam does not have sufficient capacity to pass flood flows.

"The dam is not structurally adequate to withstand the reconstruction of a portion of it to provide more capacity.

"It is necessary to construct a new dam to properly maintain the established levels of Wind Lake."

[14] Sec. 280.01, Stats., entitled *Jurisdiction over nuisances*, providing:

"Any person, county, city, village or town may maintain an action to recover damages or to abate a public nuisance from which injuries peculiar to the complainant are suffered, so far as necessary to protect the complainant's rights and to obtain an injunction to prevent the same."

either negligent or intentional conduct.[15] If the reference is to the initial acquisition of the existing dam structure and its continued presence at the outlet of the lake, as the town contends, such acquisition is an intentional tort to which governmental immunity applies under sec. 895.43, Stats.

If, on the other hand, the claimed nuisance is grounded on alleged negligent conduct of the town to which the defense of governmental immunity does not apply, then, as this court held in *Raisanen,* "It necessarily follows that if there was no negligence there was no nuisance."[16] In *Raisanen,* given both a claim of tort liability for negligence in the programming of traffic control signals and a separate claim of maintaining a public nuisance for negligent programming, this court said as to the added claim of nuisance: "Plaintiff added nothing to the sufficiency of the complaint by his allegations of nuisance."[17]

Just so, here we hold the complaint must stand or fall on whether it alleges negligence by the town after it acquired the dam in the maintenance and operation of said dam. If negligence is not properly pleaded, the complaint falls and "nothing is added" by terming the required negligence to "as such" constitute maintaining a public nuisance.

To conclude, we affirm the trial court holding that this complaint as presently constituted, even given a liberal construction, does not state a cause of action against this defendant. However, under all of the circumstances here present, if plaintiff can plead a cause

[15] *Raisanen v. Milwaukee, supra,* n. 6, at 514, citing *Schiro v. Oriental Realty Co.,* 272 Wis. 537, 546, 76 N.W.2d 355 (1956) and *Walley v. Patake,* 271 Wis. 530, 541, 74 N.W.2d 130 (1956).

[16] *Raisanen v. Milwaukee, supra,* n. 6, at 514, 515.

[17] *Id.* at 514.

of action that comes within the limited liability of the town in the maintenance and operation of the dam as above set forth, we find it proper and equitable that he be given the opportunity so to do. The order of the trial court denying leave to make, file and serve an amended complaint is modified to provide that this plaintiff be granted twenty days from the date of remittitur to prepare, serve and file an amended complaint, if he so elects to do.

*By the Court.*—Judgment modified and, as modified, affirmed.