Renee KIMPS, Plaintiff-Respondent-Cross Appellant-
Cross Respondent-Petitioner,
NORTH CENTRAL HEALTH CARE PROTECTION PLAN,
Nominal-Plaintiff,

v.

Dr. Leonard M. HILL, Defendant-Appellant-Cross
Respondent,

JAYFRO CORPORATION, a Subsidiary of Verified Sports,
Inc., Defendant-Respondent-Cross Respondent, Cross
Appellant-Petitioner,

Allen R. KURSEVSKI, Defendant-Cross Respondent,

Dr. John MUNSON, Marty Loy, Sister Rosella Rein-
wand, Jerry Burling, Milwaukee Sporting Goods,
Pacific Employers Insurance Company, Allen R. Kur-
sevski, Donald P. Burling, Gregory Diemer, Valley
School Suppliers, a Division of QIII Corporation and
INA Insurance Company, Defendants.

Supreme Court

*No. 92–2736. Oral argument November 28, 1995.—Decided
April 10, 1996.*

(Also reported in 546 N.W.2d 151.)

For the plaintiff-respondent-cross appellant-cross respondent-petitioner there were briefs by *Keith F. Ellison, Paul E. David* and *Patterson, Richards, Hessert, Wendorff & Ellison*, Wausau and oral argument by *Keith F. Ellison.*

For the defendant-appellant-cross respondent there were briefs by *David A. Ray* and *Terwilliger, Wakeen, Piehler & Conway, S.C.*, Stevens Point and *Frank A. Scherkenbach, Susan R. Tyndall* and *Hinshaw & Culbertson*, Milwaukee, of counsel and oral argument by *David A. Ray.*

For the defendant-appellant-cross respondent the cause was argued by *Robert D. Repasky*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

JANINE P. GESKE, J. This is a review of a published decision of the court of appeals,[1] affirming in part and reversing in part the judgment of the Circuit

[1] *Kimps v. Hill*, 187 Wis. 2d 508, 523 N.W.2d 281 (Ct. App. 1994).

Court for Portage County, Frederic W. Fleishauer, Judge. The case arose as a negligence action brought by Renee Kimps (Kimps), for a foot injury she sustained during a class at the University of Wisconsin-Stevens Point (UW-SP). The central issue is whether public officer immunity bars recovery against either or both named state employee defendants. The circuit court dismissed the claim against Allen Kursevski (Kursevski), a former UW-SP safety officer, on grounds of immunity, but ruled that Leonard Hill (Hill), the instructor of the class in which Kimps was injured, was not entitled to such immunity. The court of appeals reversed in part, concluding that both men were entitled to public officer immunity. We agree.

## FACTS

Kimps was enrolled at UW-SP studying to be an elementary teacher. On October 20, 1988, she attended a required laboratory section of Physical Education for the Classroom Teacher in which the student teachers were to instruct young children, who had volunteered for the exercise, in a variety of physical education activities. Kimps and her partner had chosen to present a class on volleyball. As part of the course, Hill instructed his students on general safety matters and the use of some of the more dangerous gymnastics equipment, but did not give any specific warnings as to use of the volleyball equipment. Approximately 60 college students were enrolled in the course and about 100 children between the ages of three and twelve were participating. The class was simultaneously conducted in three adjacent areas of the gymnasium. Hill testified that he had decided to primarily direct his attention on that day to supervision of the trampoline class, as the

5

equipment was the most complicated and its use posed the greatest risk of injury in his opinion.

UW-SP had purchased nine sets of portable volleyball standards (poles to which a volleyball net is attached) from their manufacturer, Jayfro Corporation, between 1969 and 1971. The standards were designed to disassemble for storage and consisted of detachable poles which fit into sleeves or holes in the 150 pound metal bases. The poles were held in place by two set screws which passed through the sleeve and tightened against the outside surface of the pole. The standard is designed to be moved by tipping it onto two wheels permanently mounted on the sides of the circular base and either pulling or pushing on the pole.

In preparation for her class exercise, Kimps and another student were moving a volleyball standard which was kept in a hallway near the gym. Kimps, who was walking behind the standard, was injured when the metal base separated from the pole and fell onto her foot as the student who was pulling it tried to dislodge it from a doorsill on which it had become stuck.

Two years prior to this incident, in October of 1986, a similar accident occurred in which a pole separated from its base which fell onto the foot of a maintenance worker who was helping to move one of the standards. At the time, Kursevski was the safety officer at UW-SP.[2] He investigated the incident, which had been reported under worker's compensation. Another employee[3] suggested to Kursevski the possi-

---

[2] Kursevski was no longer working at UW-SP at the time of Kimps' accident.

[3] This employee, Larry Obiala, was the supervisor of the injured maintenance worker but was not in a position of authority in relation to Kursevski.

bility of drilling holes into the standards and inserting a bolt through the sleeve into the interior of the poles. However, Kursevski decided that altering the manufacturer's design potentially posed a greater risk management problem than leaving it as is and rejected the idea.

Kursevski determined that the appropriate response to the accident was that maintenance personnel should check to make sure the set screws were tight before moving the standards. He memorialized this in the required worker's compensation report in the following manner: "supervisors must check equipment and material to insure that it can be safely used and/or handled." Existing UW-SP procedures did not provide for campus-wide distribution of these reports. Neither the administration nor any of the teaching personnel in the physical education department, including Professor Hill, knew of the maintenance worker's accident. Hill testified that, in his twenty-plus years of teaching (eight of them at UW-SP) and using such volleyball standards, he was not aware of any prior occasions on which a pole and base had separated.

Kimps brought a negligence action against Hill, Kursevski and Jayfro, the manufacturer of the volleyball standard.[4] At the close of Kimps' case in the

---

[4] Kimps additionally named several other defendants including the State of Wisconsin, the University of Wisconsin-Stevens Point, the Board of Regents of the University of Wisconsin System, Milwaukee Sporting Goods and Valley School Supplies (distributors of the equipment), Pacific Employers Insurance Company, INA Insurance Company and several additional individual UW-SP employees: Dr. John Munson, Marty Loy, Sister Rosella Reinwand, Jerry Burling, Donald P. Burling, and Gregory Diemer. Resolution of the claim against these parties is not at issue here.

ensuing trial, the State (representing its employees, Hill and Kursevski) moved for dismissal of the claims against both men on the basis of public officer immunity. The circuit court took the motion under advisement and, after the jury had retired for deliberations, granted the motion as to Kursevski but denied it as to Hill. The jury returned a verdict allocating causal negligence in the following manner: Renee Kimps (plaintiff)—10 percent; Jayfro Corp. (defendant)—10 percent; Allen Kursevski (defendant)—35 percent; Dr. Len Hill (defendant)—45 percent. The jury fixed damages at $59,853.

Hill appealed the judgment against him, and Kimps and Jayfro cross-appealed concerning Kimps' rights of recovery against Kursevski. The court of appeals concluded that both Hill and Kursevski were entitled to immunity as public officers and therefore affirmed the circuit court's dismissal of the claim against Kursevski and reversed the order of judgment against Hill. This court granted Kimps' and Jayfro's petitions for review.

## ISSUES

(1) Is professor Hill entitled to the protection of public officer immunity?

(2) Is former UW-SP safety officer Kursevski entitled to the protection of public officer immunity?

Both issues require us to determine the proper scope of the common law doctrine of public officer immunity, a question of law which we review de novo without deference to the courts below. *K.L. v. Hinickle*, 144 Wis. 2d 102, 109, 423 N.W.2d 528 (1988).

Although both the petitioners and respondents, in their briefs, and the court of appeals, in its opinion,

8

addressed the arguments concerning immunity as they applied to Hill and then Kursevski sequentially, we will approach them topically. The arguments raised by the petitioners can be generally divided into the categories of: discretionary versus ministerial duties, known and compelling danger, the applicability of the "sign cases" (or the duty to maintain), and finally, an effort to distinguish governmental versus non-governmental and planning versus operational conduct. Following a short introduction, we will address each category in turn in an attempt to clarify overlapping issues and arguments.

## PUBLIC OFFICER IMMUNITY

■

Immunity for public officers does not arise from the state's sovereign immunity (which is constitutional in nature),[5] but rather is grounded in the common law and based on public policy considerations. *Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976). These considerations include:

> (1) The danger of influencing public officers in the performance of their functions by the threat of lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

---

[5] Wis. Const. art. IV, § 27.

*C.L. v. Olson*, 143 Wis. 2d 701, 709, 422 N.W.2d 614 (1988) (quoting *Lister*, 72 Wis. 2d at 299).

Under the general rule as applied in Wisconsin, state officers and employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties. *Lister*, 72 Wis. 2d at 300.[6] This doctrine of immunity is not without exception, however, the most common of which is that a public officer or employee is not shielded from liability for the negligent performance of a purely ministerial duty.[7] *Id.* at 300-301. The test for determining whether a duty is discretionary (and therefore within the scope of immunity) or ministerial (and not so protected) is that the latter is found " 'only when [the duty] is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for

---

[6] The general rule of immunity for state public officers stands in contrast to that for municipalities where, "the rule is liability—the exception is immunity." *Holytz v. City of Milwaukee*, 17 Wis. 2d 26, 39, 115 N.W.2d 618 (1962). The common law immunity for municipalities was abrogated by this court in *Holytz*, however, we held that liability will not lie "on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.* at 40. This exception to municipal liability was codified in 1963 as Wis. Stat. § 331.43 (3) (subsequently renumbered as Wis. Stat. § 895.43(3), and now § 893.80(4)). The concepts and theories articulated in *Lister* are generally applicable to both state and municipal officers and the tests for immunity are similar. *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 682 n.19, 683 n.20, 292 N.W.2d 816 (1980).

[7] Further, there is no immunity for conduct that is malicious, willful and intentional. *Ibrahim v. Samore*, 118 Wis. 2d 720, 728, 348 N.W.2d 554 (1984).

its performance with such certainty that nothing remains for judgment or discretion.' " *Olson,* 143 Wis. 2d at 711-12 (quoting *Lister,* 72 Wis. 2d at 301).

## DISCRETIONARY v. MINISTERIAL

The petitioners, Kimps and Jayfro, argue that Hill is not entitled to immunity because he breached a ministerial duty. They assert that a teacher has a duty, that is ministerial in nature, to provide safe equipment for his or her students. In support of this contention, Jayfro cites Wisconsin Civil Jury Instruction 1380:

### Negligence: Teacher: Duty to Instruct or Warn

. . . A teacher has the duty to instruct and to warn the pupils in his or her custody of any dangers which the teacher knows, or in the exercise of ordinary care ought to know, are present in the classroom (laboratory, gymnasium, etc.) and to instruct them in methods which will protect them from those dangers, whether the danger arises from equipment, devices, machines, or chemicals. A failure to warn the students of such danger or instruct them in means of avoiding such danger is negligence.

This argument is illustrative of a recurrent problem in the manner in which this case was briefed and orally argued—the petitioners confuse the issue of negligence with that of immunity. Just because a jury can find that certain conduct was negligent does not transform that conduct into a breach of a ministerial duty.[8] Hill and Kursevski do not contest the jury's findings of neg-

---

[8] In order to find negligence, a jury must find that a duty was breached, if only the duty of ordinary care. The existence of a duty of care to another does not necessarily imply that the duty was ministerial.

11

ligence and consequently that is not the subject of our review. Indeed, we begin our review of this case on the assumption that negligence exists here; if it were otherwise, Hill and Kursevski would not need to seek the protection of immunity.

Jayfro argues that the existence of a teacher's duty to provide safe equipment, combined with the simple design of the Jayfro standard, equate to a ministerial duty. "Nothing remained for the exercise of Dr. Hill's judgment of discretion. [sic] If the set screws were loose, which they obviously were, they needed to be tightened immediately." We find this reasoning not only circular (the pole and base of the standard separated, therefore the set screws must have been loose, the accident would not have happened if the screws had been tightened, therefore Hill had a ministerial duty to tighten the screws, which he violated), but also wholly unconvincing. Such an argument completely misconstrues the test for determining when a duty is ministerial. A party cannot work backwards from a consequence to create a duty that is "absolute, certain and imperative."

The petitioners also argue that once Hill decided to use the volleyball equipment he assumed a ministerial duty to assure that the equipment was safe.[9] Jayfro

[9] In briefs, and in oral argument, petitioners took the position that the only way that Hill's conduct could have been characterized as discretionary, not ministerial, would be if Hill had "chosen not to allow volleyball standards to be utilized in the teaching program. He could have chosen not to teach volleyball."

This argument compels us to respond. Hill was hired by the state of Wisconsin to teach aspiring teachers how to conduct physical education classes. The logical extension of the petition-

and Kimps rely on the decision of the court of appeals in *Barillari v. City of Milwaukee*, 186 Wis. 2d 415, 418, 521 N.W.2d 144 (Ct. App. 1994), *rev'd*, 194 Wis. 2d 247, 533 N.W.2d 759 (1995), to support the proposition that once a public official undertakes a certain course of conduct, he or she thereby undertakes a ministerial duty. Last term, subsequent to the filing of briefs in this case, we reversed the court of appeals on this very issue. *See Barillari v. City of Milwaukee*, 194 Wis. 2d 247, 255, 533 N.W.2d 759 (1995). That case involved an incident in which Shannon Barillari reported to the police that she had been sexually assaulted by her ex-boyfriend who then threatened to kill her and himself. Milwaukee police detectives allegedly promised to either apprehend the suspect or notify her if he was not arrested. They did neither, and five days later Shannon was shot to death by her ex-boyfriend who then committed suicide. We held that any "promise" that was made by the police "did not transform the character of their discretionary acts during the investigation of the case to ministerial duties." *Barillari*, 194 Wis. 2d at 255-56.[10] Similarly, we find that Professor Hill's decision to allow his students to teach a section on volleyball in a class devoted to teaching physical educa-

ers' argument is that UW professors would be faced with the option of choosing either not to teach or losing all immunity for doing what they've been hired to do—teach. We reject this argument.

[10] Unlike the situation in this case, which involves state employees, *Barillari* involved a claim against a municipality for the acts of its employees and our holding was based upon statutory immunity provided under Wis. Stat. § 893.80(4). *Barillari v. City of Milwaukee*, 194 Wis. 2d 247, 262, 533 N.W.2d 759 (1995).

tion did not transform his exercise of discretion in how to conduct that class into a ministerial duty.

The petitioners also assert that Kursevski should be held liable because he was negligent in the performance of a ministerial duty. Jayfro contends that "one source" of Kursevski's ministerial duty can be found in his job description as "Risk Manager/Safety Director." Jayfro cites the following language as relevant:

> Investigate all incidents and take action to correct the condition or procedure that caused the accident. Incidents investigated include Worker's Compensation claims, . . .

This language, according to Jayfro, creates a ministerial duty in that it is "absolute, certain and imperative" in requiring that Kursevski "take action to correct the condition" that caused the maintenance worker's accident. Jayfro further argues that, given the "extremely simple design" of the volleyball standard, the "mode and occasion" for the corrective action was limited to only one possibility—that Kursevski tighten the set screws or make sure someone else did. Kursevski's response to this argument was that application of such an analysis would effectively result in abandonment of the *Lister* discretionary/ministerial distinction and substitution of an after-the-fact determination to be made on a fact sensitive case-by-case basis. We agree with Kursevski and reject Jayfro's invitation to so alter the test which we have employed for twenty years.

To restate that test, in *Lister* we held that "a public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its per-

formance with such certainty that nothing remains for judgment or discretion." *Lister*, 72 Wis. 2d at 301. We do not find that Kursevski's job description created a ministerial duty. The "time, mode and occasion" for performing an investigation of the maintenance worker's accident and determination of the appropriate corrective action to be taken remained totally within Kursevski's judgment and discretion.

## KNOWN DANGER

Next Kimps argues that a ministerial duty arose when Kursevski failed to respond to a compelling and known danger. This argument is based on our decision in *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977). We found that the facts in that case warranted a special exception be made to the general rule of public employee immunity. The manager of a state-owned park was held subject to liability for negligence by failing to take steps to warn of the dangerous condition posed by a path open for night hiking that ran within inches of a precipitous drop into a 90-foot gorge. *Id.* We concluded that because the park manager knew of the dangerous terrain, was in a position to do something about it, yet did nothing, he was not immune to liability. *Id.* at 541. Our holding in that case was based on facts that presented a "duty so clear and so absolute that it falls within the definition of a ministerial duty." *Id.* at 542.

In *Olson*, we clarified that a public officer's duty becomes ministerial only "where, as in *Cords*, the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act." *Olson*, 143 Wis. 2d at 715. The facts here show that Kursevski did investigate and

take action he deemed appropriate to address the problem. Further, a single incident involving a piece of athletic equipment that the University had owned and safely used for between 15 and 17 years cannot reasonably be compared with the "compelling and known" danger posed by a path passing within inches of a 90-foot cliff. We conclude that the nature of the danger posed here cannot be equated with that in *Cords* and did not create a duty so "clear and absolute" that it became ministerial on Kursevski's part. Kursevski acted within his discretion as safety officer and is therefore entitled to immunity.

## APPLICABILITY OF THE "SIGN" CASES

Kimps draws an analogy between the situation in this case and the case law that holds that once a municipality makes a discretionary decision to place a sign or light pole, the actual placement of the object and its maintenance are ministerial in nature and thus not entitled to immunity. She argues that, in this manner, Hill lost his discretionary immunity once he decided to allow the volleyball standards to be used in his class. Kimps bases this argument on a line of "sign" cases which include: *Firkus v. Rombalski*, 25 Wis. 2d 352, 130 N.W.2d 835 (1964) (town had no initial duty to erect sign but, having done so, had duty to properly maintain); *Chart v. Dvorak*, 57 Wis. 2d 92, 203 N.W.2d 673 (1973) (state highway officials held amenable to suit for sign placement inconsistent with the Uniform Manual); and *Foss v. Town of Kronenwetter*, 87 Wis. 2d 91, 273 N.W.2d 801 (Ct. App. 1978) (town immune from suit for non-placement of sign but amenable to liability for lack of maintenance of barriers at dead-end).

Hill counters that the cases Kimps relies on are inapplicable because each involved failure to obey a

specific order or legislative directive: *Firkus*, 25 Wis. 2d at 357 (new stop sign to replace one removed by vandals had been ordered but not yet received or replaced); *Chart*, 57 Wis. 2d at 100 (Uniform Manual adopted by State Highway Commission under its statutory authority directed that warning sign be placed 750 feet in advance of hazard warned of); *Foss*, 87 Wis. 2d at 104 (failure to replace barricade at Town-approved fill site for future road extension).

We agree with Hill that the entire line of "sign" cases is inapplicable to our analysis in this instance. This is not a case where a specific task had been undertaken such that certainty attached to the "time, mode and occasion" for its completed performance. Not only was Hill under no order or directive to use particular equipment or teach his class in a particular manner, but we do not find the placement or maintenance of highway warnings in any way analogous to the discretionary activities that Professor Hill engaged in on a day-to-day basis.

### GOVERNMENTAL v. NON-GOVERNMENTAL

In the alternative, the petitioners argue that even if Hill's activities are characterized as discretionary, he is excepted from immunity because that discretion was non-governmental. The petitioners offer three definitions of non-governmental discretion which they claim apply equally well to Hill. First, they assert that, as a "professional," Hill's activities are necessarily non-governmental. In support of this position, they quote the following language from the court of appeals' decision in *C.L. v. Olson*, 140 Wis. 2d 224, 231, 409 N.W.2d 156 (Ct. App. 1987), *aff'd*, 143 Wis. 2d 701, 422 N.W.2d 614 (1988):

17

> [g]overnmental immunity does not attach to a parole agent's decision merely because it involves discretion. The question is whether the decision involved the type of judgment and discretion which rises to governmental discretion, as opposed to professional or technical judgment and discretion.

Jayfro and Kimps advance the theory that a "professional" like Hill (whom the petitioners remind the court has a doctorate in education and 23 years of teaching experience), by definition, cannot exercise governmental discretion in the performance of his job because he "was not advising his students regarding purely governmental functions."

We do not read the appellate court's decision in *Olson* as holding that "professional judgment" and "governmental discretion" are mutually exclusive. In fact, in reviewing the lower court's opinion, this court commented that the decision in question there (that of a parole agent granting driving privileges to a paroled sex-offender) involved the exercise of both governmental discretion and professional judgment. We held that the parole officer was entitled to immunity. *Olson*, 143 Wis. 2d at 725. Here, the fact that Hill's profession requires that he exercise his discretion in the performance of his governmental duties as a teacher for the state does not strip him of the protective cloak of immunity.

Secondly, Kimps claims that this court must find that Hill's conduct was non-governmental because Hill failed to demonstrate that his discretion involved the application of statutes to facts. Initially, it should be noted that Hill does not carry a burden to demonstrate that he is entitled to immunity; on the contrary, the general rule for state employees is immunity and an

18

exception must be demonstrated in order for this rule not to apply.

As noted earlier in this opinion, there are many public policy reasons underlying public officer immunity. Hill correctly argues that government employees must be free to make judgment calls on difficult choices regarding the allocation of public resources such as money and time, including their own. Professor Hill was faced with just such a resource allocation dilemma in determining what was the safest way to supervise his students and a large number of youngsters from the community engaged in a variety of activities. He decided to focus his attention on the activity posing the greatest potential risk—the trampoline. That discretionary call is entitled to immunity.

The court of appeals responded to the petitioners' "non-governmental" argument by citing *Stann v. Waukesha County*, 161 Wis. 2d 808, 818, 468 N.W.2d 775 (Ct. App. 1991), which held that the non-governmental exception to discretionary immunity was applicable only in situations involving medical decisions.[11] The appellate court concluded, therefore, that such an argument was foreclosed in this case under the rule of

---

[11] The following quote from *Stann v. Waukesha County*, 161 Wis. 2d 808, 818, 468 N.W.2d 775 (Ct. App. 1991), refers to *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980); *Protic v. Castle Co.*, 132 Wis. 2d 364, 392 N.W.2d 119 (Ct. App. 1986); and *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985):

> First, the authorities upon which the Stanns rely for their "discretion but still not governmental discretion" argument are not applicable to the case at bar. Only three Wisconsin decisions have recognized such a distinction. However, each of these cases involved allegations of negligence regarding medical decisions. These cases are restricted to their facts, as no Wisconsin decision applies this exception in any other setting.

19

*stare decisis*. *Kimps*, 187 Wis. 2d at 516. We do not take this opportunity to comment on the conclusion reached by the appellate court in *Stann* nor do we accept the petitioners' invitation to extend the *Scarpaci* governmental/non-governmental exception to a state-employed teacher.[12]

---

[12] In tort jurisprudence in Wisconsin and other states, the governmental/proprietary dichotomy arose in the context of immunity for municipal corporate entities and is uniquely applicable to claims against municipalities. "Governmental" functions have alternately been defined as those involving the kind of power expected of government, those of the essence of governing, public, mandatory or essential, while "proprietary" functions are associated with actions of a municipality that are akin to those of a private corporation or private enterprise that are somewhat commercial in nature. *See generally* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 131 (5th ed. 1984); 5 Fowler V. Harper et al., *The Law of Torts* § 29.6 (2nd ed. 1986); 2 Stuart M. Speiser et al., *The American Law of Torts* § 6:9 (1985). According to one commentator, this dichotomy has led to "an endless proliferation of decisions teeming with subtle and tortured distinctions . . ." Speiser et al., *supra*, at 49.

In 1962, this court stated that "[i]n determining the tort liability of a municipality it is no longer necessary to divide its operations into those which are proprietary and those which are governmental." *Holytz*, 17 Wis. 2d at 39. We reject the petitioners' attempt to resurrect this test in the context of a claim against a public officer. When reviewing the common law rule of immunity for state officers or employees, the inquiry has been and remains primarily one of determining whether the alleged negligent conduct involved a discretionary or ministerial duty. As we summarized in *Olson*, the shield of immunity will fall with the latter when a duty is:

> absolute, certain and imperative, involving merely the performance of a specific task and (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for the exercise of discretion; or (2)

The distinction between governmental and non-governmental conduct was first utilized by this court in *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980), where we found that the manner in which a county coroner performed an autopsy involved an exercise of medical non-governmental discretion and therefore did not fall under the statutory exception to liability for "quasi-judicial acts" expressed in Wis. Stat. § 895.43(4). *Scarpaci*, 96 Wis. 2d at 686-88. It is notable that *Scarpaci* involved a municipal claim (where the general rule is liability not immunity) which we decided on the grounds that the statutory exception to liability was inapplicable in the given situation. Here, we deal with the common law rule that state officials and employees are generally immune from liability for their discretionary acts. In *Olson*, we found the presence of no circumstances that warranted exception to the general rule of public officer immunity. *Olson*, 143 Wis. 2d at 725. We concluded that the professional judgment involved in a parole officer's decision regarding rules and conditions of parole constituted governmental discretion and was not similar to the type of judgment exercised in performing an autopsy that had been excepted from immunity in *Scarpaci*. *Id.* at 724-25.

We find the *Scarpaci* non-governmental exception equally inapplicable to the circumstances here. We conclude that any negligent omissions or commissions by Hill were clearly made in the course of performing governmental functions as a state-employed teacher. The critical inquiry when determining public officer immu-

there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion.

*Olson*, 142 Wis. 2d at 717 (citations omitted).

nity, in all but the very rare case, remains the discretionary versus ministerial analysis. Hill exercised his discretion on how best to teach the class while acting within the scope of his employment and, therefore, is entitled to immunity.

## PLANNING v. OPERATIONAL

Finally, Kimps argues that even should this court view Kursevski's duty as discretionary, he is still excepted from immunity because that discretion was operational. Kimps maintains that only discretionary decisions that are on the planning level, *i.e.* those that involve evaluation or determination of fundamental governmental policy, should be entitled to immunity.[13]

Kimps supports this position by again citing the "sign" cases (*Foss* and its progeny) and *Domino v. Walworth County*, 118 Wis. 2d 488, 347 N.W.2d 917 (Ct. App. 1984). According to Kimps, these cases delineate a zone of protected discretion which encompasses only planning decisions, whereas those decisions which are merely operational in nature extend beyond the zone and are therefore not covered by immunity. Kimps acknowledges that the words "planning" or "operational" are not used in these cases and yet she contends "it is clear that the same [planning/operational] rationale was being employed."

Jayfro makes this same argument relying primarily on *Gordon v. Milwaukee County*, 125 Wis. 2d 62, 370 N.W.2d 803 (Ct. App. 1985), which in turn is based on a series of federal circuit court cases interpreting 28 U.S.C. § 2680(a) of the Federal Tort Claims Act. The

---

[13] Jayfro also contends that Hill's discretion was planning rather than operational in nature and therefore not entitled to immunity. The applicability (or inapplicability) of this analysis to both Hill and Kursevski is the same.

*Gordon* court found persuasive the reasoning of federal courts drawing a distinction between planning functions which involve policy choices and operational acts involving details of day-to-day management, with the former entitled to immunity and the latter not. *Id.* at 68-69. Jayfro argued that further evidence that Wisconsin has "essentially adopted the operational level exception to public officer immunity" could be found in the "sign" cases and *Lange v. Town of Norway*, 77 Wis. 2d 313, 253 N.W.2d 240 (1977). In the latter case, this court found that the municipality might be held subject to liability for negligence in the maintenance and operation of a dam it had acquired. *Id.* at 322.

As the respondents correctly point out, this court has never articulated an "operational" exception to the rule of discretionary public officer immunity and we decline to do so now.[14] We find the federal cases upon which *Gordon* relied to be inapposite because they involve statutory construction of a specific section of the United States Code. We are not faced with an analogous situation in our examination of the scope of Wisconsin's common law rule of public officer immunity. Further, in *United States v. Gaubert*, 499 U.S. 315, 326 (1991), the Supreme Court has decried the perpetuation of the "nonexistent dichotomy between discretionary functions and operational activities."

A discretionary act is one that involves choice or judgment; there is nothing in that description that

[14] We find Jayfro's suggestion that the *Lange* reference to the Town's duty to "properly operate" the dam's floodgate constitutes an adoption of the planning/operational distinction to be unpersuasive. *Lange v. Town of Norway*, 77 Wis. 2d 313, 320, 253 N.W.2d 240 (1977).

refers exclusively to policy-making or planning functions. Day-to-day management of banking affairs, like the management of other businesses, regularly requires judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level.

*Id.* at 325. We agree with this statement and believe it is equally applicable to the wide range of permissible choices that public officers like Kursevski and Hill are called upon to make in the daily exercise of their discretionary judgment.

We decline the invitation to create a planning/operational distinction to be utilized in the analysis of state employee immunity. The cases interpreting the common law rule of public officer immunity are already complicated enough and we do not endorse the addition of yet another test which is ill-defined and difficult to apply. The critical distinction remains whether or not a public officer's acts are discretionary or ministerial. We conclude that both Hill and Kursevski's actions were discretionary in nature and fall squarely within the general rule that "a public officer is not personally liable to one injured as a result of an act performed within the scope of his official authority and in the line of his official duty." *Lister*, 72 Wis. 2d at 300.

For the reasons articulated above, we conclude that both Hill and Kursevski are entitled to public officer immunity. Therefore, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. and WILLIAM A. BABLITCH, J. did not participate.