See note to this case in 37 N. W. Rep. 823.— REP.

OLSON, Respondent, vs. THE CITY OF CHIPPEWA FALLS, Appellant.

*April 2 — April 17, 1888.*

*Municipal corporations: Defective street: Unguarded precipice: Unmanageable horses: Proximate cause of injury.*

Horses ordinarily quiet and steady, attached to a wagon, were standing in a public street, when they became suddenly frightened and unmanageable and backed the wagon over a steep embankment within the limits of the street, which had negligently been left unguarded by the city, and the plaintiff, who was in the wagon, was injured. *Held,* that in the absence of contributory negligence the city is liable for the injury. The frightened and unmanageable condition of the horses was not such an independent cause of the injury as to prevent a recovery.

APPEAL from the Circuit Court for *Chippewa* County. Action to recover damages for personal injuries and the loss of personal property sustained by reason of the defect-

ive and unsafe condition of a highway in defendant city. The facts will sufficiently appear from the opinion.

At the close of the trial the jury returned a general verdict in favor of the plaintiff, assessing her damages at $650; also a special verdict as follows: (1) " *Question.* Was the highway at the place of the accident in a condition of insufficiency? *Answer.* Yes. (2) *Q.* Was Mr. Walker in the exercise of ordinary care in leaving the team in front of the mill, in charge of the plaintiff, in the manner and under the circumstances he did? *A.* Yes. (3) *Q.* Did the team, while in the plaintiff's charge, become unmanageable? *A.* Yes. (4) *Q.* If you answer 'yes' to the last above question, did the team become more than momentarily unmanageable? *A.* No. (5) *Q.* Did the plaintiff exercise ordinary care by making proper efforts to arrest the backing of the team? *A.* Yes."

From the judgment entered on the verdict, in favor of the plaintiff, the defendant appeals.

For the appellant there was a brief signed by *J. A. Anderson,* city attorney, and oral argument by *J. J. Jenkins.* They contended that the fright and unmanageable condition of the team constituted the primary cause of the accident, for which the city would be in nowise responsible. *Houfe v. Fulton,* 29 Wis. 296; *Kelley v. Fond du Lac,* 31 id. 179; *Moore v. Abbot,* 32 Me. 46; *Taylor v. Woburn,* 130 Mass. 499. It being established that the unmanageableness of the team was not in any manner chargeable to the defendant, there can be no recovery even though the driver was in no fault. *Marble v. Worcester,* 4 Gray, 401–2; *Murdock v. Warwick,* id. 180; *Rowell v. Lowell,* 7 id. 102; *Titus v. Northbridge,* 97 Mass. 264; *Houfe v. Fulton,* 29 Wis. 305–7; *Jackson v. Bellevieu,* 30 id. 258; *May v. Princeton,* 11 Met. 444; *Kelley v. Fond du Lac,* 31 Wis. 179. It is the duty of the traveler to remain in the traveled portion of the highway, and if he leaves the same and injury ensues he cannot

recover.   *Kelley v. Fond du Lac*, 21 Wis. 186–7; *Sykes v. Pawlet*, 43 Vt. 446.   Where the plaintiff's unskilfulness or negligence primarily contributes to the injury, a recovery is barred.   *May v. Princeton*, 11 Met. 442; *Delaney v. M. & St. P. R. Co.* 33 Wis. 75; *Davis v. Dudley*, 4 Allen, 560; *Otis v. Janesville*, 47 Wis. 423; *Cronin v. Delavan*, 50 id. 375; *Rowell v. Lowell*, 7 Gray, 100; *Stickney v. Salem*, 3 Allen, 374.   And the question of want of care and unskilfulness is not one for the jury when it is plainly the cause of the accident.   *Achtenhagen v. Watertown*, 18 Wis. 331; *Hill v. New Haven*, 37 Vt. 501; *Barber v. Essex*, 27 id. 62; *Teipel v. Hilsendegen*, 44 Mich. 461; *Pzolla v. M. C. R. Co.* 54 id. 273.

*Arthur Gough*, for the respondent, argued, among other things, that the highway was, as found by the jury, "in a condition of insufficiency."   *Palmer v. Andover*, 2 Cush. 600; *Hayden v. Attleborough*, 7 Gray, 338; *Pittston v. Hart*, 89 Pa. St. 389; *Stevens v. Boxford*, 10 Allen, 25; *Chicago v. Gallagher*, 44 Ill. 295; *Wilson v. Atlanta*, 60 Ga. 473; *Alger v. Lowell*, 3 Allen, 402; *Adams v. Natick*, 13 id. 429; *Davis v. Hill*, 41 N. H. 329; *Prideaux v. Mineral Point*, 43 Wis. 514, 523; *Wheeler v. Westport*, 30 id. 392; *Hart v. Red Cedar*, 63 id. 634, 641.   To the point that there was no negligence on the part of the plaintiff, and that the question of negligence was for the jury, he cited *Britton v. Cunnington*, 107 Mass. 347; *Kenney v. Cohoes*, 100 N. Y. 623; *Black v. Brooklyn City R. Co.* 108 N. Y. 640; *Hull v. Kansas City*, 54 Mo. 598; *Cobb v. Standish*, 14 Me. 198; *Griggs v. Fleckenstein*, 14 Minn. 81; *Albert v. B. S. R. Co.* 2 Daly, 389; *Myers v. I. & St. L. R. Co.* 113 Ill. 386; *Pool v. C., M. & St. P. R. Co.* 56 Wis. 227; *Stilling v. Thorp*, 54 id. 528.

ORTON, J.   The facts of this case appear to be substantially and briefly these: Prairie street of said city passes over a bridge that spans quite a large stream of water,

called "Duncan Creek," in a northwesterly direction towards the country. About forty-five feet from the north end of the bridge is a large flouring-mill, called the "Star Mills;" and running from the corner of the bridge to the end of the mill in a somewhat circular form is the steep embankment of the creek, twenty feet above the water (which is about three feet deep), within the boundary of the street, and about twenty feet from its center. The surface of the street descends towards this embankment, and the embankment is entirely unguarded by fence, wall, or other barrier. The street passes on in front of the mill, the platform of which is within the street, and then passes on towards the country. A man by the name of Walker, who lives several miles in the country, and a farmer, had been to the city on business with a two-horse team and wagon. The plaintiff, who was a Norwegian girl about thirty years of age, and quite lately an emigrant from Norway, stout and healthy, was being carried by the said Walker to his home for the purpose of becoming his servant. She sat on the seat with him when they passed over said bridge and stopped in the street in front of the mill, where he got out to go into the mill on some business of his own, and left the plaintiff in the wagon holding the team, with the rear end of the wagon towards the embankment, when suddenly, without the least warning, the horses became frightened at something about the mill, perhaps a corn-sheller, which suddenly appeared to them with motion and noise, immediately in front; and as suddenly they backed the wagon over the embankment into the creek, by which the plaintiff was seriously injured, and came near losing her life. The team was an ordinarily quiet and steady team, and not unusually skittish or restless. The plaintiff did what she could in the sudden emergency to keep the team from backing, but failed. The street as it leaves the bridge and passes in front of the mill is consider-

ably narrower than the other streets of the city, and less than four rods wide.

It is common observation that people having business at such a mill leave their teams standing in front of it, as Walker did, and that any team of horses, however steady and well broken, is liable to become frightened suddenly by some object in front, and begin to back away from the apparent danger; and that when any such team begins to back it is extremely difficult if not impossible to stop them within the distance of twenty feet, and even whipping may not do it. This was an extremely dangerous place in the street, and the negligence of the city authorities in not guarding such an embankment by some proper barrier is apparent. But the jury were allowed by the court to view this place and surroundings, and this court would be unable to revise their findings on the condition of the place. All the exceptions, except that to the admission of improper testimony, relate to the merits of the case, such as refusing a nonsuit, refusing to instruct the jury to find for the defendant, and to grant a new trial. The evidence admitted against objection related to the repair of the defect complained of, by placing a barrier at the precipice to keep teams from backing over since the accident, and *that* the jury must have seen on their view whether there had been testimony of it or not, and this could not be helped.

The main ground for a reversal of this judgment on the merits is that the frightened and unmanageable condition of the team as an independent cause of the injury in this case prevents a recovery, and the learned counsel cites a great many cases supporting this doctrine, as they understand it, and among them the case of *Houfe v. Fulton*, 29 Wis. 296. That case is almost exactly parallel to this, and that is the only authority that need be considered on that question. The driver and another man were riding in a cutter over a bad bridge without a barrier on one side at

least.   The horse became suddenly frightened, or excited, or shocked, and *started* and *shied* as suddenly, at something or for some cause, and went over the bridge sideways, and the plaintiff was injured.   The horse was unusually safe and kind, and was being driven properly until it unexpectedly stopped and shied and ran off the bridge sideways, and the driver was unable to prevent it.   In that case it was uncertain whether the horse was frightened or had a fit, and it would make no difference as to its being an independent cause of the accident.   Chief Justice Dixon makes a thorough examination of the authorities upon this very question of horses becoming frightened and unmanageable while being driven on a highway that is defective, and points out clearly the exception to that rule and holds that the case he was considering was within the exception.   He says: "But whatever the true ground of such decisions may be, or whether they are sound or not, it is unnecessary to inquire here, since a recognized exception to them is that a horse is not to be considered uncontrollable that merely *shies or starts or is momentarily not controlled by his driver.* Such was the fact in the present case."   He then refers to the case of *Titus v. Northbridge*, 97 Mass. 264, as being like that case, and approves the opinion of the chief justice in that case.   That case is still closer in point with the present case.   The doctrine is in both cases, and in all cases, that where the horse (or horses) suddenly and merely shies, or starts, or backs, or goes sideways, and is momentarily not controlled or uncontrollable, and goes over a bridge or embankment negligently remaining without a reasonable guard or barrier, and the driver does his best to prevent it, and the horses are usually steady and kind and not more liable to sudden starts or fright than common horses, the driver, if injured by such defect, may recover.   The case of *Houfe v. Fulton, supra,* was sustained on this ground, and that case rules this in every particular.   The other authorities

cited by the learned counsel of the appellant are not at all applicable to this case. This accident happened in a most natural way in view of such a dangerous embankment open and unguarded. The team was stopped before the mill in the usual manner, and left in the care of a competent person to hold them until the owner should transact his business in the mill and return. The team instantly and suddenly became frightened by some suddenly appearing object, probably a corn-sheller near the mill, and as instantly and suddenly backs the wagon over the embankment, and the driver is utterly unable to stop them. The plaintiff was wholly without fault, and if that embankment had been properly guarded no harm would have resulted from the backing of the team. Such a movement of any team would not be at all uncommon under such circumstances, and so the city might have anticipated when it left the steep bank of the creek so unguarded in such a place. Any common team with any common driver would be likely to do as this team did.

The only other ground for a reversal of the judgment urged by the appellant's counsel is the contributory negligence of the plaintiff as the driver of the team. The evidence seems to be very clear that she did all that any driver would have done under the circumstances. Whipping horses' within a few feet of a precipice of a river's bank twenty feet in perpendicular height would be extremely hazardous. They might start forwards or they might go backwards still faster. It would be difficult to drive any team into the front face of an object by which they were so frightened as to suddenly go backwards to avoid it. We think the case a very clear one on its merits, and that the verdict was warranted by the evidence.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 37 N. W. Rep. 575.— REP.