WISNIEWSKI, Respondent, vs. TOWN OF BELMONT, Appellant.

*October 11—November 7, 1933.*

36

*W. E. Atwell* of Stevens Point, for the appellant.

For the respondent there was a brief by *Fisher, Cashin & Reinholdt* of Stevens Point, and oral argument by *W. E. Fisher.*

FAIRCHILD, J. The construction of the town road involved in this case is not unusual for one in its situation and it does not possess any peculiarity marking it as defective. It is an usual type of dirt road and from photograph and verbal description in the evidence it may be classified as a sufficient road in a rural community sufficient to meet the travel demands. That it was slippery because thawing softened up the surface so that a thin covering of mud was formed, does not render it a defective highway. See *Thiele v. Green Bay,* 206 Wis. 660, 238 N. W. 834, and cases there cited. If the traveled track of this town road was in such a state of repair as to be reasonably safe for travelers, the town had complied with the obligation placed upon it in the matter of maintaining it. The traveled track had ample capacity for the accommodation of the respondent. Several witnesses gave their estimates of the width of the road for some distance east of the place where respondent was injured. These estimates vary as to its narrowness in certain places. There is some testimony that points to the traveled track being at places around nine feet wide. The surveyor, however, who was produced as a witness by the respondent, testified to the making of measurements and drawing diagrams and maps of the territory including the highway bearing relation to the place of accident. He began his survey on the 23d day of March, 1931, twelve days after the accident. He had been at the scene before this. He made measurements of the distance from the ditch to the crown of the road and the distance across the crown. These measurements were made at certain stations which he fixed one hundred feet apart, except near the scene of the accident where he made some additional measurements. He drew, based on these measurements, a map which was offered in evidence and is now before us. The map shows the width of the portion of the road prepared for travel. On this map he drew lines near the center of the road that run parallel with

the ditch lines. These lines mark the outside of the edges of the crown or traveled track from which there is a gradual slope to the lowest point in the gutter or ditch line; for instance: 270 feet from the place of accident where there is a slope of 2.10 feet from the south crown line or south edge of the traveled track to the bottom of the ditch in a distance of 9 feet; 170 feet east there is a like fall of 2.7 feet in 11½ feet; and 70 feet away from there is a like fall of 3 feet in 13 feet; then near the place where the wagon box was found there appears to be a like fall of 3.4 feet in 11.4 feet. The respondent was traveling west. Seventy feet east of the place where the wagon box fell from the wagon the traveled track is 12½ feet wide. One hundred feet east of that it is 13.4 feet wide, and 100 feet east of that it is 13½ feet wide. As the respondent traveled along the highway, at some point about 150 feet east of the place where he was hurt, he permitted his team to move out of the traveled track and to pursue a course somewhat southwesterly. At least the track made by the left wheels of his wagon indicated his departure from the crown or traveled track at a very slight angle and his progress in a somewhat south of westerly direction. By the time he jumped from his wagon fifty feet east of the place where the box went off, he had gotten a few feet to the south of the south crown line or the south edge of the traveled track. He advances as a reason for leaving the traveled track the permitting of his horses to straddle a rut. There is no evidence of any concealed condition such as existed in the case of *Branegan v. Verona,* 170 Wis. 137, 174 N. W. 468, where the driver of an automobile turned from the traveled track a few inches and his left wheel dropped off a rather precipitate and partially concealed edge causing the car to tip over.

One cannot exact damage from a town because of injury to himself within the limits of a highway unless caused by some defect existing within or adjacent to the traveled track

for which the town is responsible. This road was graded from the sides toward the center, the traveled track was on the top. It was broad enough for respondent's needs and was a sufficient and convenient highway for the purpose it was to serve. It seems clear that had the respondent stayed within the very obvious limits of the traveled track which was sufficiently wide, his difficulties would not have arisen. The town had placed before him a straight highway with a traveled track bounded on either side by grading which gently sloped into the ditch some eight-odd feet from the outside boundaries of the traveled track. All this was apparent to the traveler. He was not injured by any obstruction in the traveled track or adjacent to it. No incident for which the town is responsible caused him to deviate from the beaten path.

It is urged that a railing at some point would have prevented the accident. We cannot indorse the idea that there was any obligation upon the town to build a fence along the highway from some point on the east to beyond the place where the accident happened. The place where the depth of the ditch below the traveled track was greatest was where the box left the wagon, but a railing on the highway at that point would have been of no assistance to respondent, for he had deviated from the traveled track more than one hundred feet east of that. The physical facts bring considerable confusion to some of the testimony given by respondent, but we do not think it necessary to make any further analysis. From the evidence, picturing and describing the road and its traveled track, we are constrained to hold that there was no defect in the construction of the highway and that the town is not responsible for the injury sustained by respondent.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.