LINDGREN, Administrator, Plaintiff, vs. LA CROSSE COUNTY, Defendant. [Two cases.]

*April 13—May 9, 1939.*

For the plaintiff there were briefs by *Hale & Skemp* of La Crosse, and oral argument by *Quincy H. Hale*.

*W. H. Stevenson*, district attorney, attorney, and *C. L. Baldwin* of La Crosse of counsel, for the defendant.

FRITZ, J.   In these actions the plaintiff, as administrator of the estates of Mary Lindgren, deceased, and Richard Lindgren, deceased, seeks to recover damages from La Crosse county for their deaths by reason of alleged insufficiencies and want of repair of a highway maintained by that county. The deaths occurred when an automobile, which Mrs. Lindgren was driving on a highway on an embankment, struck holes in the roadway and ran diagonally down the side of the embankment into water of such depth that they were drowned. The jury found that there was causal negligence on the part of Mrs. Lindgren in the management and control of the automobile, and on the part of the county by reason of insufficiencies and want of repair in the highway by reason of chuckholes in the roadway and the absence of a guardrail or cable on the side thereof; and further found that forty per cent of the total causal negligence was attributable to Mrs. Lindgren. The court, in ordering judgment in the action brought to recover damages for the death of Mrs. Lindgren, limited the amount to sixty per cent of the damages assessed by the jury. The plaintiff in appealing from that judgment contends that the court erred in not setting aside

the jury's findings that Mrs. Lindgren was negligent as to management and control of the automobile by reason whereof forty per cent of the total causal negligence was attributable to her; and in not ordering judgment for plaintiff for the entire amount of damages found by the jury. On the other hand, the defendant, on its motion for review in that action, as well as on its appeal from the judgment in the action to recover damages for Richard Lindgren's death, contends that the court erred in not granting defendant's motions for a nonsuit, directed verdict or for judgment *non obstante veredicto,* on the ground that no actionable insufficiency or want of repair of the highway was proven. If, under the evidence and the law applicable thereto, that ground is established with no room for findings of facts admitting of a conclusion to the contrary, then there is, of course, no necessity for passing upon the assignments of error and contentions made by the parties in other respects.

The following facts are undisputed or can be inferred from evidence construed most favorably to the plaintiff. The accident happened on May 9, 1938, at about 8:20 a. m., while Mrs. Lindgren was driving an automobile on a twenty-feet-wide black-top macadam roadway maintained by the defendant along the middle of the forty-feet-wide level surface of an embankment or causeway across sloughs and channels of the Black river. The embankment was about two thousand five hundred feet long, and the roadway constituted the only means for vehicular travel from the city of La Crosse to French island, which was inhabited by several hundred people. To the north and south of the level surface of the embankment the sloping sides thereof were covered with riprap to the water's surface. In normal water stages the embankment was about fifteen feet high, but higher water stages reduced its height to eight to ten feet. The water on both sides of the embankment varied in depth from five to twelve feet. In about the middle of the ten-feet-wide level

surface extending along the outer edges of the twenty-feet-wide black-top roadway there was a row of eight-inch posts, forty feet apart and four to five feet above the surface, set about two feet into the sand or ground. They were not connected by any wire, rope, netting, or guardrail. Due partly to the fact that the embankment was constructed with filled-in material, the roadway would settle at times in an uneven manner, so that its surface would become somewhat pitted with holes. When Mrs. Lindgren, driving westward at twenty to twenty-five miles per hour on the north half of the roadway, reached a point seventy-five feet east of a gasoline truck, which was traveling eastward on the south half of the roadway, there were three chuckholes on her north half of the roadway. Their greatest depth was about three and a half inches. According to the plaintiff's contentions, two of them, about twenty-seven inches in length east and west and twenty inches wide, were in line east and west immediately north of the center line of the roadway, so as to be about in the left wheel tracks of a westbound automobile; and almost five feet north of them there was a smaller hole in a line with the right wheels of such an automobile. So a westbound vehicle traveling in its normal lane of traffic would strike the two holes with its front wheels and a few inches farther west its left front wheel would strike the second large hole, and it would be given sort of a "shimmy" effect with the front wheels twisting back and forth from the jolt of striking the three holes. Plaintiff contends that happened when the front wheels of Mrs. Lindgren's automobile struck the holes, and that the shimmying jerked the steering wheel out of her hand so that she lost control of the car and caused it to veer and pass diagonally to the south about twenty-five feet ahead of the eastbound truck, across the south half of the roadway and the additional ten-feet-wide level surface of the embankment, at the edge of which it rolled down the sloping riprap facing of the embankment into the water without tipping. When it was about forty-six feet southwest of the three

chuckholes, the front bumper of the automobile struck and pushed down one of the eight-inch posts set along the level shoulder on the south side of the roadway. At some time during the course of the accident the pipe line of the hydraulic brakes on the automobile was broken, but the steering gear was not damaged.

The jury found (1) that the highway was insufficient and in want of repair with respect to (a) chuckholes in the traveled track of the highway, and (b) the absence of a guardrail or cable on the south side thereof; (2) that the accident causing the deaths was the natural and probable result of the insufficiency and want of repair in respect to (a) chuckholes, and (b) a guardrail or cable; and (3) that Mrs. Lindgren was guilty of causal negligence in the manner in which she operated the automobile in respect to (a) management and control, (b) but not in respect to speed, and (c) that of the total causal negligence forty per cent was attributable to her and sixty per cent to the county. However, in respect to the chuckholes, the jury also found (a) that the defendant's officers did not know of such insufficiency and want of repair in time to have remedied the same before May 9, 1938, and (b) that such insufficiency and want of repair had not existed for such a time prior to May 9, 1938, as to enable the officers charged with the duty of attending to such matters, by the exercise of ordinary care to have discovered and repaired such insufficiency and want of repair. The jury's findings in those two respects do not appear to have been challenged by motions after verdict, and as they were permitted to stand they apparently met with the court's approval. At all events they were warranted by the evidence. It appears that on Saturday, May 7, 1938, the county's employees had properly filled in and repaired the chuckholes; that during the night of May 7th and all of Sunday two inches of rain fell and washed out or caused settling which resulted in the condition of the holes at the time of the accident; and that Monday morning the county employees were en route,

at the time of the accident, to again repair the defects and arrived at the place of the accident very shortly after its occurrence at 8:20 a. m. Furthermore there was evidence that at that time of the year, when it is cold and rainy, it is nearly impossible to make that kind of repair work permanently; that it can be done in the summertime with tar and crushed rock, which then stays when put in the holes; but that one cannot work with tar in the rain, or wet and cold weather. Under the circumstances there was no lack of due diligence or failure to exercise due care on the part of the county's officers in repairing the holes in question, and by reason of the jury's findings that the county's officers did not know of the insufficiency and want of repair in respect to the holes in time to have remedied them before the accident, and that they had not existed for such a time prior thereto as to enable the county, in the exercise of ordinary care, to have discovered and repaired them, there was no actionable negligence or liability on the part of the county by reason of the holes. As this court said in *Peake v. Superior,* 106 Wis. 403, 409, 82 N. W. 306:

"If the highway was originally constructed with reasonable safety, but afterwards became defective by action of the elements or the act of a third person, and a traveler was injured thereby, the question whether the municipal officials had notice of the defect, or had exercised ordinary and reasonable care and diligence in inspecting the highway and repairing the defect, arises, and must be decided. In other words, the duty to make the street reasonably safe in its original construction is absolute; but the duty to discover and repair defects afterwards occurring, not by acts of the municipality, is one involving only ordinary and reasonable care and diligence."

See also *Morley v. Reedsburg,* 211 Wis. 504, 248 N. W. 431.

If a highway which has been put in proper condition becomes, without neglect on the part of a municipality, sud-

denly insufficient or in want of repair by reason of some action of the elements, and the municipality did not have knowledge thereof, or sufficient time had not elapsed for it, with reasonable diligence, to have acquired knowledge of the insufficiency and to have put the highway in repair or otherwise guard against and prevent the injury, the municipality is not liable. *Jaquish v. Ithaca,* 36 Wis. 108, 111; *Ward v. Jefferson,* 24 Wis. 342, 343, 344; *Alexander v. Oshkosh,* 33 Wis. 277, 282. It follows that in so far as the chuckholes are concerned, there is no sufficient basis for holding the defendant liable.

The other alleged insufficiency or defect upon which the plaintiff relies in charging the defendant with liability is the absence of a guardrail or cable along the south side of the twenty-feet-wide roadway to prevent a vehicle from going down that side of the embankment. In support of his contention that the absence of a guardrail was an actionable defect, the plaintiff cites *Prideaux v. Mineral Point,* 43 Wis. 513, 523; *Olson v. Chippewa Falls,* 71 Wis. 558, 37 N. W. 575; *Hein v. Fairchild,* 87 Wis. 258, 58 N. W. 413; *Branegan v. Verona,* 170 Wis. 137, 140, 174 N. W. 468; *Seymer v. Lake,* 66 Wis. 651, 29 N. W. 554. In each of those cases the condition constituting the danger or defect because of which the roadway was held insufficient in the absence of an adequate barrier or guard, was within or immediately adjacent to the traveled portion thereof. In *Prideaux v. Mineral Point, supra,* there was a six-feet-high precipice in the middle of a traveled street of the city as the result of the authorities having raised one half in width of the street over a depression by an embankment some six feet high in the middle and gradually lessening toward each end. As a result, the side of the embankment above the other half of the street, which was left on its natural level, was precipitous and rough, without railing or barrier to protect travelers from being precipitated over it. The city claimed that each

half of the street was sufficient for travel; and that because each half was safe by itself, the whole street was safe. But the court said:

"This is a great and mischievous error. A traveled highway must be reasonably safe for travel over its whole surface. *Cremer v. Portland,* 36 Wis. 92. A road cut in two by a precipice is almost equally unsafe in fact, is equally insufficient in law, whether the precipice be across or along the highway."

In *Olson v. Chippewa Falls, supra,* there was, within the boundary of a city street, a steep embankment running in somewhat circular form twenty feet above the water of a creek. The surface of the street descended toward this embankment, which was entirely unguarded by fence, wall, or other barrier. In *Hein v. Fairchild, supra,* a track about fourteen feet wide was graded south of the center of a street, so as to leave a ditch on the north side of the track about two or three feet deep, along the center line of the laid-out street. The travel on the east-and-west track was along and so near to the ditch that a slight shying or diversion of a team would bring a wagon into the ditch. In *Seymer v. Lake, supra,* the town had made an excavation, from two to two and one-third feet deep and several feet wide, for some distance along and within two feet of one side of the traveled track of a highway. The wheels next to the excavation of a wagon driven along the highway, opposite the excavation, ran off the traveled way into the excavation. In *Branegan v. Verona, supra,* the edge of a sharp decline extending downward three or three and a half feet on the west side of a turnpike came within three inches of one of the wheel tracks, and there was no railing or barrier to protect vehicles from going over the bank. As the court said:

"The dangers attending a very slight deviation from the traveled track on the west side of this turnpike are quite apparent, and the jury were entirely justified in finding that the highway was defective and unsafe for public travel as a

result of the absence of a barrier or railing along the west side of the turnpike."

The court also said that "as a general rule, that is a jury question," but that "palpable cases may arise where the court can say that the absence of a barrier or railing along the edge of a highway does or does not constitute a defect as a matter of law."

In none of the foregoing cases, upon which the plaintiff relies, was there, as in the case at bar, a wide level shoulder along the outside of the traveled portion of the roadway in which there existed the alleged dangerous or defective condition. In that respect there is a material and controlling distinction between the facts in those cases and in the case at bar. As stated above, at and about the place of the accident involved herein the level surface of the embankment was forty feet wide, and as the twenty-feet-wide black-top roadway was in the center thereof, there was in addition to the roadway along its sides a level strip ten feet wide which was available and safe for vehicular travel. The row of eight-inch posts, one of which was pushed down by the automobile, was in about the center of that ten-feet-wide strip. The defendant refers to them as simply "guide posts;" and does not claim that they were to serve as a guard or barrier. On the contrary, the defendant contends that as a matter of law it was not required to maintain any guardrail or cable along the traveled roadway at the place in question. That contention must be sustained. The court should have held as a matter of law that the absence of a guardrail or barrier at the side of the twenty-feet-wide two-lane roadway, flanked as it was on each side by a shoulder, did not constitute an actionable insufficiency or defect under the circumstances in this case. The decision in *Briglia v. St. Paul,* 134 Minn. 97, 99, 158 N. W. 794, is in point. In that case, the street in question was a well-surfaced roadway twenty-six feet wide, with level ground on one side. On the other side there was a drainage gutter six to eight inches deep, and beyond that

a raised gravel walk six feet wide. Beyond that there was a bluff or declivity. In holding that the city was not negligent in not providing a fence along the top of the bluff, the court said:

"It is the duty of the city to use ordinary care to keep its streets in safe condition for travel. The city is not, as a rule, bound to make safe for travel the area outside of a public street, nor to fence or erect barriers to prevent travelers from straying off the street to adjoining land upon which there may be dangerous places; but it is bound to provide such guards where the street itself is unsafe for travel by reason of the close proximity of excavations, embankments, deep water, or other pitfalls or dangers."

"It is not negligence for a city to construct and maintain a street or roadway along the top of a bluff. Where the roadway is narrow, and the declivity so near that it may reasonably be anticipated that the passing of vehicles, the shying of horses, or some other incident of traffic, may cause some traveler to deviate from the traveled way, and to go over the edge, the city may well be required to guard such a pitfall by the roadside.

"The duty required of a city is that of ordinary care. Generally, perhaps, it is a question of fact whether ordinary care was used. Where, however, the risk seems so negligible that it would be unreasonable to charge the city with the duty to maintain barriers, the court will declare nonliability as a matter of law. *Watson v. City of Duluth,* 128 Minn. 446, 448, 151 N. W. 143."

Those conclusions are applicable in the case at bar. It follows that neither the absence of a guardrail or cable, nor the presence of the chuckholes which had become washed out by rain after the repair thereof on the preceding Saturday, affords sufficient basis for liability on the part of the county for damages for the injury and death of Mary Lindgren and Richard Lindgren, and that consequently the judgments under review must be reversed and judgment must be entered dismissing the complaint in each action.

*By the Court.*—Judgments reversed, and the causes remanded with directions to enter judgment dismissing the complaint in each action.