Foss, Plaintiff-Appellant, v. Town of Kronenwetter, Defendant-Respondent and Third-Party Plaintiff: Mutual Service Casualty Insurance Company, and others, Defendants-Respondents: Wisconsin Valley Trust Company, Personal Representative of the Estate of John P. Norship, Third-Party Defendants-Respondents. [Case No. 77–577.]

Estate of Norship, by Wisconsin Valley Trust Company, Personal Representative, Plaintiff-Appellant, v. George Babl, Inc., and another, Defendants-Respondents: Town of Kronenwetter, Defendant-Respondent and Third-Party Plaintiff: Mutual Service Casualty Insurance Company, Third-Party Defendant-Respondent. [Case No. 77–578.]

Court of Appeals

*Nos. 77–577, 77–578. Argued September 19, 1978.—*
*Decided December 1, 1978.*
(Also reported in 273 N.W.2d 801.)

92

For the appellant there were briefs by *Bachhuber Law Office and Timken, Lonsdorf & Mallery, S.C.* and oral arguments by *F. E. Bachhuber, Jr.* and *James P. Lonsdorf,* of Wausau. [Case No. 77–577.]

For the respondents Town of Kronenwetter and Mutual Service Casualty Insurance Company there was a brief by *Tinkham, Smith, Bliss, Patterson, Richards & Hessert* and oral argument by *George A. Richards,* of Wausau. [Case No. 77–577.]

For the respondents George Babl, Inc. and Sentry Insurance there was a brief by *Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.* and oral argument by *Walter H. Piehler,* of Wausau. [Case No. 77–577.]

For the appellant there were briefs by *Stevens & Drach* and oral arguments by *John W. Stevens,* of Wausau.

For the respondents, Town of Kronenwetter and Mutual Service Casualty Insurance Company there was a brief by *Tinkham, Smith, Bliss, Patterson, Richards & Hessert* and oral argument by *George A. Richards,* of Wausau.

Before Dean, P.J., Donlin and Foley, JJ.

DONLIN, J. Plaintiffs Donna Foss (Foss) and the Estate of John Norship (Norship) appeal from orders entered by the circuit court for Marathon county, setting aside the jury verdict and granting defendants George Babl, Inc. (Babl) and Sentry Insurance (Sentry) a directed verdict and granting the defendants Town of

Kronenwetter (Town) and Mutual Service Casualty Insurance (Mutual) a new trial on liability. The Town and Mutual cross-appeal the denial of their motion for a directed verdict and their motion to reduce damages under a subrogation theory. We affirm.

At about midnight on April 27, 1974, Norship and Foss, a passenger on Norship's motorcycle, rode over an embankment in the Town of Kronenwetter, at what the defendants maintain was the end of Nelson Road and at what the plaintiffs maintain was a construction site for a westerly extension of Nelson Road. The motorcycle landed in a low swamp about twenty feet below the embankment. Norship was killed and Foss sustained injuries. Defendant Babl dumped fill at the edge of and over the embankment about five months before the accident.

At those times, Nelson Road was an unpaved town road, running west from old Highway 51 for three-tenths of a mile. The intersection of old 51 and West Nelson Road was lighted and a yellow dead-end sign was bolted to the back of the stop sign at the intersection. The sign was on the left side of the road facing traffic proceeding from old 51 onto West Nelson Road toward the accident site. At the dumping site, before the drop-off, there was an unpainted steel barricade attached to two wooden posts. At trial the testimony was in conflict as to whether the barricade posts were in the ground and whether there were any reflectors on the barricade at the time of the accident.

The Town had authorized a westerly extension to Nelson Road at its annual meeting in April, 1974, on land dedicated to the Town in 1964. When Babl dumped the fill at the end of the road in December, 1973, the barricade had been removed by Ben Jansen, an owner of property north of Nelson Road, with the acquiescence of the Town. After Babl completed its dumping, the Town's grader leveled off the dumped material. Jansen and the

town chairman testified they replaced the barricade. However, some residents of Nelson Road testified the barricade was lying on top of the mound of rubble and dirt before the accident.

Foss and Norship brought actions against the Town, Babl, their respective insurers, and against Ben Jansen. The jury apportioned negligence as follows: Town, 65%; Norship, 25%; Foss, 5%; Babl, 5% and Jansen 0%. The trial court granted Babl a directed verdict dismissing Foss's complaint, denied the Town a directed verdict, but granted the Town a new trial on liability. Also denied was the Town's motion to reduce Foss's damages by $10,000, the amount Foss received under a group health and accident insurance policy.

The following issues are before this court on appeal:

(1) Whether the Town was entitled to a directed verdict.

(2) Whether the Town is entitled to a new trial on liability as ordered by the trial court.

(3) Whether Babl was entitled to a directed verdict against Foss.

(4) Whether the collateral source rule precludes reduction of the jury damage award by the amount of payments received by Foss under a group health and accident insurance policy.

### Directed Verdict for Town

The Town moved for a directed verdict before the case was submitted to the jury, and renewed its motion after the jury had attributed 65% of the causal negligence to it. The trial court denied the motion on the ground that there was sufficient evidence to support a finding of negligence in failing to warn or properly barricade the end of Nelson Road, but did grant the Town's motion for a new trial on liability.

The test for whether a directed verdict should have been granted is the same whether the decision is made before or after submission to the jury. If in the light most favorable to the plaintiffs, there is any evidence, other than mere conjecture or incredible evidence to sustain the plaintiffs' causes of action and a verdict against the Town, then the decision was for the jury and the trial court properly denied the Town's motions.[1]

The complaints allege a breach of the Town's common law duty to warn of the dead end of Nelson Road,[2] and the evidence presented at trial was such that a properly instructed jury could have reasonably found the Town was causally negligent.[3]

The Town's duty to warn arises from the state of development of Nelson Road and of the surrounding residential area[4] and from topographical factors, namely the rubble pile and drop-off at the end and the swath extending west therefrom.[5] Unless users of highways are charge-

---

[1] *Samson v. Riesing*, 62 Wis.2d 698, 215 N.W.2d 662 (1974); *Zillmer v. Miglautsch*, 35 Wis.2d 691, 151 N.W.2d 741 (1967).

[2] The complaints also contained allegations sufficient to raise issues as to the breach of certain statutory duties arising under secs. 86.01 and 86.022, Stats., and instructions based on these statutes were given to the jury. This presents a question as to whether there was any evidence to sustain such causes of action so as to entitle the plaintiffs to such instructions; this is the converse of the question whether giving them was prejudicial error so as to entitle the Town to a new trial or, absent any other viable cause of action, a directed verdict.

[3] *Ceplina v. South Milwaukee School Board*, 73 Wis.2d 388, 243 N.W.2d 183 (1976).

[4] *But cf. Wisniewski v. Town of Belmont*, 213 Wis. 34, 250 N.W. 859 (1933) (usual type of dirt road sufficient to meet travel demands in rural community).

[5] Other factors relevant to a determination of a municipality's duty of ordinary care with respect to highways include the amount

able with notice from signs, barriers, vegetation, or the nature and location of a particular road, they have a right to assume highways will not terminate abruptly at an embankment.[6] However, without specific legislative or administrative standards, the absence of a sign or barrier on a particular dead-end road does not always amount to a breach of a municipality's duty of ordinary care.[7]

If a properly instructed jury could reasonably find a causal breach of the Town's duty, such negligence is not necessarily actionable. The Town's negligence is actionable[8] if plaintiffs' injuries happened by reason of an

and character of traffic, the development of the community, and the standard of road construction attained in the community. *See e.g.*, *Westler v. City of Milwaukee*, 34 Wis.2d 272, 149 N.W.2d 624 (1967); *Bowen v. Town of Osceola*, 185 Wis. 11, 200 N.W. 766 (1924); *Branegan v. Town of Verona*, 170 Wis. 137, 174 N.W. 468 (1919).

[6] Several older cases involving so-called discontinued or altered courses of travelled highway contain similar but broader language; although distinguishable on their facts (they involve "used ways") they do speak to the reasonable expectations of travelers: *Martinson v. Polk County*, 227 Wis. 444, 279 N.W. 60, 227 Wis. 447, 279 N.W. 61 (1938) (curve removed and ditch dug across former highway); *Raymond v. Sauk County*, 167 Wis. 125, 166 N.W. 29 (1918) (no warning signs of oil slick on roadway); *Bills v. Town of Kaukauna*, 94 Wis. 310, 68 N.W. 992 (1896) (discontinued roadway obstructed by barbed wire but which appeared open to travel was a "trap" and town had duty to take all reasonable precautions). *See also Schroeder v. Chapman*, 4 Wis.2d 285, 90 N.W.2d 579 (1958).

[7] *See, e.g., Butcher v. City of Racine*, 189 Wis. 541, 208 N.W.2d 244 (1926) (barrier alone was sufficient warning to travelers); *Wisniewski, supra*, note 4. *Branegan, supra*, note 5.

[8] Secs. 81.15 and 895.43, Stats., in themselves neither create statutory duties nor establish standards of care required, but both attach preconditions to and limitations on the right to recover from municipalities. These restrictions, not relevant here, affect the amenability of municipalities to suit for highway-related negligence where an unwary claimant has not complied

insufficiency or want of repair of any highway, or if the Town's acts were not done in the exercise of legislative, quasi-legislative, or quasi-judicial functions pursuant to secs. 81.15,[9] or 895.43 (3),[10] Stats., respectively.

with the more stringent notice requirements of sec. 81.15, Stats. While sec. 81.15, does not preempt all causes of action against municipalities with respect to highways, the more stringent notice requirements apply if an insufficiency or want of repairs of a highway is involved. *See, e.g., Harte v. City of Eagle River,* 45 Wis.2d 513, 173 N.W.2d 683 (1970); *Schwartz v. City of Milwaukee,* 43 Wis.2d 119, 168 N.W.2d 107 (1969); *Raisanen v. City of Milwaukee, infra,* note 20.

[9] Sec. 81.15, Stats., derived from ch. 16, sec. 103, R.S. (1849), provides in relevant part:

If damages happen to any person . . . by reason of the insufficiency or want of repairs of any highway which any town . . . is bound to keep in repair, the person sustaining such damage shall have the right to recover the same from such town. . . .

The standard jury instruction, Wis. JI—Civil 1029 (1974), based on sec. 81.15, was requested by the plaintiffs Foss and Norship and given by the trial court. The Town did not object and no party requested an instruction which explained the Town's common law duty as distinguished from its lack of immunity for negligence upon certain findings under sec. 81.15. Stats.

The question of whether a municipality is liable for highway-related negligence pursuant to sec. 81.15 is generally a jury question. *See e.g., Cable v. Marinette County,* 17 Wis.2d 590, 117 N.W.2d 605, 608 (1962); *Becker v. City of La Crosse,* 9 Wis.2d 540, 101 N.W.2d 677 (1960); *Keller v. City of Port Washington,* 200 Wis. 87, 227 N.W. 284 (1929); *Branegan v. Town of Verona, supra,* note 5. *But see Weiss v. City of Milwaukee, infra,* note 20; *Dusek v. Pierce County, infra,* note 20; *But cf. Loehe v. Village of Fox Point,* 253 Wis. 375, 34 N.W.2d 126 (1948) (reversing the denial of summary judgment by the trial court).

[10] Sec. 895.43 (3), Stats., created by ch. 198, Laws of 1963, provides in relevant part:

(N)or shall any suit be brought against such . . . corporation, subdivision or agency or against its officers, officials, agents or employees· for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

Generally, whether a municipality is entitled to immunity under sec. 895.43 (3), Stats., is a question of law for the court. *Jorgen-*

The plaintiffs do not cite and our research does not reveal any cases holding a lack of adequate warning of a dead end is an insufficiency or want of repair of a highway.[11] Sec. 81.15, Stats., has spawned a line of cases which have not always been consistent in their development, theory, or language.[12] The Wisconsin Supreme Court has described the scope of negligence actionable under sec. 81.15, as limited to that involving physical defects existing in the traveled surface of the highway or absence or insufficiency of warnings of such defects,[13] and has expressly withdrawn language that any defect in the maintenance or operation of traffic signals was an insufficiency or want of repair.[14] Being satisfied that a dead end is by its very nature not in the traveled portion[15]

son v. Northern States Power Co., 60 Wis.2d 29, 208 N.W.2d 323, 328 (1973). But cf. Cords v. Ehly, 62 Wis.2d 31, 214 N.W.2d 432 (1974) (question of fact whether alleged negligence by named DNR officials was in performance of ministerial duties); Chart v. Dvorak, infra, note 18 (question of fact whether named state Department of Transportation officials had improperly placed warning signs and thereby negligently performed ministerial duties). See also Pavlik v. Kinsey, infra, note 20.

[11] But cf, Bendorf v. City of Darlington, 31 Wis.2d 570, 143 N.W.2d 449 (1966) (dictum regarding Sec. 81.15 in case construing immunity under sec. 66.046, Stats.); Smith v. City of Green Bay, 223 Wis. 427, 271 N.W. 28 (1937) (appealed on other grounds).

[12] Stippich v. City of Milwaukee, 34 Wis.2d 260, 149 N.W.2d 618, 621 (1967).

[13] Weiss v. City of Milwaukee, infra, note 20. Accord, Dusek v. Pierce County, infra, note 20.

[14] The language in Raisanen, infra, note 20 was "deemed inappropriate" in Weiss, infra, note 20, 255 N.W.2d at 500.

[15] In their arguments concerning sec. 86.022, Stats., the plaintiffs rely upon several cases cited infra, note 36, for the proposition that an obstruction not in the traveled portion may be an actionable insufficiency. The obstructions in these cases were along the sides of highways, not at dead ends. Similarly, the cases

and that plaintiffs failed to establish that the rubble pile was in the traveled portion, we conclude the failure to warn here is not actionable under sec. 81.15.[16]

Sec. 895.43(3), Stats., confers statutory immunity on municipalities and their officers for acts done in the exercise of specified discretionary functions. In a series of cases involving immunity with respect to highway signs,[17] the supreme court has established a general rule that once a legislative or quasi-legislative decision to place a highway sign is made, negligence in placement may be and negligence in maintenance is actionable;[18] however, the cases distinguish placement from maintenance.

In the present case, the plaintiffs allege negligence in the placement of the dead end sign and in the maintenance of the barrier, both as to reinstallation and as to

---

involving defective guard rails are not controlling here. *See e.g., Lindgren v. La Crosse County,* 231 Wis. 347, 285 N.W. 772 (1939); *Bowen v. Town of Osceola, supra,* note 5; *Branegan v. Town of Verona, supra,* note 5. *See generally Dusek v. Pierce County, infra,* note 20, 167 N.W.2d at 249. The "used way" cases, cited *supra,* note 6, are also distinguishable because they involve discontinued or altered courses of traveled highways, not a dead-end road which was subsequently extended. *See also Hanson v. Town of Clinton, infra,* note 34.

[16] *Cf. Loehe v. Village of Fox Point,* 253 Wis. 375, 34 N.W.2d 126 (1948) (reversing denial of summary judgment, holding that right angle curve gave ample and timely warning to "due-care users" of highway). As to "due care users," *see also Kobelinski v. Milwaukee & Suburban Transport Corp.,* 56 Wis.2d 504, 202 N.W.2d 415 (1972); *Heritage Mutual Insurance Co. v. Sheboygan County,* 18 Wis.2d 166, 118 N.W.2d 118 (1962); *Cable v. Marinette County, supra,* note 9. Since we find the Town's negligence was nonactionable because no physical defects are involved, we need not reach the issue of whether a jury could have reasonably found a risk of harm to a due care user of the highway.

[17] Cases cited *infra,* 18–20.

[18] *Chart v. Dvorak,* 57 Wis.2d 92, 203 N.W.2d 673, 677 (1973).

lack of reflective capacity. The purpose of dead end signs and barriers being to warn highway users of a hazardous condition, we deem the barrier to be a "sign" within the highway sign cases.

In sign maintenance cases[19] the supreme court has held that negligence in failing to replace a stop sign removed by vandals and negligence in failing to prevent foliage from obscuring a stop sign were actionable, notwithstanding sec. 895.43(3), Stats. However, in the sign placement cases,[20] sec. 895.43(3) was held to preclude actions for negligence involving programming and operation of traffic signals, a stop sign at a T-intersection and a single stop sign at a double intersection. In the immunity cases the supreme court has refused to countenance second-guessing of the reasonableness of the legislative choices themselves or to consider the consequences of such choices.

The court has proscribed judicial second-guessing where an examination of the relevant statutes or administrative rules revealed an express[21] or implied[22] zone of discretion encompassing the alleged negligence and where it could infer that such discretion was, in fact, exercised.[23] Recognizing and deciding to respond to the

---

[19] *Naker v. Town of Trenton*, 62 Wis.2d 654, 215 N.W.2d 38 (1974); *Firkus v. Rombalski*, 25 Wis.2d 352, 130 N.W.2d 835 (1964); *cf. Lange v. Town of Norway*, 77 Wis.2d 313, 253 N.W.2d 240 (1977) (no immunity for negligent maintenance of a dam).

[20] *Weiss v. City of Milwaukee*, 79 Wis.2d 213, 255 N.W.2d 496 (1977); *Dusek v. Pierce County*, 42 Wis.2d 498, 167 N.W.2d 246 (1969); *Raisanen v. City of Milwaukee*, 35 Wis.2d 504, 151 N.W.2d 129 (1967). *See also Pavlik v. Kinsey*, 81 Wis.2d 42, 259 N.W.2d 709 (1977).

[21] *Weiss v. City of Milwaukee, supra*, note 20.

[22] *Raisanen v. City of Milwaukee, supra*, note 20.

[23] *Weiss, supra*, note 20, 255 N.W.2d at 504. Having held there was an express grant of discretion pursuant to sec. Hy. 11.03(3), Adm. Code, and noting there was no allegation of abuse of dis-

hazards of increased traffic at a T-intersection has also been deemed an immune legislative function.[24] To date the court has not found immunity in a case involving sign maintenance.

Norship contends improper sign placement is actionable pursuant to *Chart, supra,* note 18, where state highway officials were held amenable to suit for sign placement inconsistent with the Uniform Manual.[25] At the time of Norship's crash, however, the manual was not effective for signs on town roads.[26] There being no applicable statutory or administrative standards for warn-

cretion, the court "acknowledged . . . an unusual intersection" was involved and inferred the city's decision was within the discretionary zone.

[24] *Dusek v. Pierce County, supra,* note 20.

[25] U. S. Department of Transportation, Federal Highway Administration, *Manual on Uniform Traffic Control Devices for Streets.*

[26] Sec. 349.065, Stats. (1973), created by ch. 185, L. 1973, effective January 1, 1974, provides:

349.065 **Uniform traffic control devices.** Local authorities shall place and maintain traffic control devices upon highways under their jurisdiction to regulate, warn, guide or inform traffic. *The design, installation and operation or* use of new traffic control devices placed and maintained by local authorities after the adoption of the uniform traffic control devices manual under s. 84.02(4)(e) shall conform to the manual. After January 1, 1977, all traffic control devices placed and maintained by local authorities shall conform to the manual. (Emphasis added.)

"Local authorities" include towns. Sec. 340.01(26), Stats. Before January 1, 1977, only new signs placed or maintained by local authorities *after* the adoption of the Manual by the Highway Commission were required to conform with the Manual. The Manual (1973 ed.) was adopted pursuant to sec. 84.02(4)(e) on September 19, 1974. Highway Commission *Minutes* (Sept. 19, 1974).

*Compare Chart v. Dvorak, supra,* note 18, 203 N.W.2d at 677 n. 5 (construing secs. 84.02(4)(c) & (d), 349.08, Stats. (1959) regarding applicability of the manual on state trunk highway system).

ing signs, the Town is immune from suit for negligent sign placement because the Town's duty to locate the sign on a separate post on the right shoulder was not so "absolute, certain and imperative . . . that nothing remained for discretion."[27]

Nevertheless, the negligent reinstallation of the barrier and maintenance without reflectors or their equivalent, if found by the jury, is actionable.[28] Having once decided to erect the barrier in the exercise of what may have been a protected quasi-legislative function, the Town is amenable to suit for causal negligence in failing to reasonably maintain it.

This result is entirely consistent with the policy underlying immunity for the exercise of quasi-legislative and other similar functions. The record here and the facts of other maintenance cases disclose no authorized planning within guidelines set by state or local legislative bodies. Moreover, there is no basis for inferring such discretion was in fact exercised.

The Town not being entitled to immunity as to negligent maintenance of the barrier, and jury questions being presented on the Town's causal negligence, the Town was not entitled to a directed verdict.

### New Trial for the Town

The jury found 65% of the causal negligence was attributable to the Town and 25% and 5% of the causal

---

[27] *Cf. Lifer v. Raymond,* 80 Wis.2d 503, 259 N.W.2d 537 (1977) (tests for immune discretionary acts of state officials and immune quasi-legislative functions are the same). As to test, *see e.g. Lifer v. Raymond, supra, Lister v. Board of Regents,* 72 Wis.2d 282, 299, 240 N.W.2d 610, 621 (1976).

[28] *Naker v. Town of Trenton, supra,* note 19; *Chart v. Dvorak, supra,* note 18.

negligence was attributable to plaintiffs Norship and Foss, respectively. The trial court believed such apportionment was grossly disproportionate and unsupported by the evidence, and granted the Town a new trial on liability. The Town would have this court sustain the order for a new trial on these grounds but, in addition, contends that the giving of certain instructions to the jury relating to the Town's duty to warn of "road construction" was prejudicial error. Since giving of such instructions was prejudicial error, we agree the Town should have a new trial on liability and therefore sustain the trial court's order.

The trial court instructed the jury:[29]

(I)t shall be unlawful for . . . any person to leave any materials in the traveled portion of any highway not closed to public travel in piles or rows without placing within one hour after sunset upon such piles or at the end of such rows a lighted lantern containing sufficient oil or fuel to keep the same burning until daylight.

The Town did authorize the extension of Nelson Road beyond the accident site at a town meeting held before the accident. Trees had been cleared from the right-of-way by a landowner several months before the town meeting. Dumping had occurred at the initiative of other parties, apparently with the permission of the Town about four months before the town meeting. At the time of the dumping, a Town grader leveled off the fill and the town chairman assisted in replacing the barricade. The plaintiffs argue that these events transformed the authorized extension to Nelson Road beyond the old embankment into a "traveled portion" of a "highway not closed to the public," thus triggering the statutory duty for the Town to place smudge pots at the site. As the jury was instructed, based on sec. 340.01(22), Stats., "highway" includes "the entire width . . . of every way

---

[29] Sec. 86.01, Stats.

open to the public as a matter of right for the purposes of vehicular travel."

An instruction must be warranted by the evidence and should not be given where the evidence does not support it.[30] Moreover, an instruction should be specific and tailored to fit the evidence.[31] Instructions containing assumptions as to disputed facts, tending to impress a court's interpretation of the evidence on the jury or to give undue prominence to the contention of one party without giving equal prominence to the contention of the other party are disapproved.[32]

Our review of the record satisfies us that the plaintiffs failed to establish the rubble was on a "traveled portion" of Nelson Road so as to entitle them to the disputed instruction.[33] It was thus error to instruct the jury as to the Town's duties under sec. 340.01(22) and sec. 86.01, Stats.

Another instruction informed the jury that: "(N)o one shall willfully place any obstruction in any public highway which impedes use of such highway . . . (and) it is not necessary that the obstruction actually be on the

[30] *Buerosse v. Dutchland Dairy*, 72 Wis.2d 239, 240 N.W.2d 176, 178 (1976); *West Bend Mutual Insurance v. Christensen*, 58 Wis.2d 395, 206 N.W.2d 202 (1973); *Erdmann v. Frazin*, 39 Wis.2d 1, 158 N.W.2d 281 (1968); *Bruss v. Milwaukee Sporting Goods*, 34 Wis.2d 688, 150 N.W.2d 337 (1967).

[31] *West Bend Mutual Insurance, supra,* note 31; *Lawrence v. Jewell Companies*, 53 Wis.2d 656, 193 N.W.2d 695 (1972); *Kink v. Combs*, 28 Wis.2d 65, 135 N.W.2d 789 (1965).

[32] *Buel v. La Crosse Transit*, 77 Wis.2d 480, 253 N.W.2d 232, 238 (1977); *Webb v. Wisconsin Southern Gas*, 27 Wis.2d 343, 134 N.W.2d 407 (1965).

[33] *Cf., Hanson v. Town of Clinton*, 156 Wis. 147, 145 N.W. 646 (1914) (where public money has been spent on a right-of-way and it has been worked and traveled so there was a beaten path over it, the town is estopped to deny that it is a public highway).

traveled portion to . . . constitute an obstruction . . . ."[34]
Aside from the question of whether giving this instruction in itself constituted reversible error,[35] consideration
of it is relevant to the determination of whether the prior
cited instruction constituted prejudicial error. In reviewing the instructions as a whole, and these in particular,
it is clear that the jury was probably misled as to the
nature of the Town's duty in regard to Nelson Road.[36]
Although the Town may well have been causally negligent in breaching an actionable common law duty to
maintain the barricade, it is likely the verdict resulted
from a misapprehension that the Town was required
by statute to place smudge pots at the end of Nelson
Road. It is clear such error was prejudicial; therefore,
the order granting the Town a new trial on liability is
sustained.

[34] The instruction is based on sec. 86.022, Stats., and case law
thereunder. The portion of the instruction regarding the "traveled
portion" is based upon several old cases. *See Druska v. Western
Wisconsin Telephone*, 177 Wis. 621, 189 N.W. 152 (1922); *Neale
v. State*, 138 Wis. 484, 120 N.W. 345 (1909); *Jenewein v. Town of
Irving*, 122 Wis. 228, 99 N.W. 346, (1904) 99 N.W. 903; *Boltz
v. Town of Sullivan*, 101 Wis. 608, 77 N.W. 870 (1899). *Cf.
Weiss v. Holman*, 58 Wis.2d 608, 207 N.W.2d 660 (1973) ("highway" in sec. 182.017(2) includes shoulder).

[35] At trial, the Town did not object to the instruction based
upon sec. 86.022, Stats., and case law thereunder. It does so on
appeal. When an instruction misstates the law, error need not
be asserted before the verdict is returned. Moreover, when an
instruction is not appropriate to the facts of the case, it misstates
the law. *Lemberger v. Koehring*, 63 Wis.2d 210, 216 N.W.2d 542,
550 (1974); *Johnson v. Heintz*, 61 Wis.2d 585, 213 N.W.2d 85
(1973); *Menge v. State Farm Mutual Automobile Insurance*,
41 Wis.2d 578, 164 N.W.2d 495 (1969). *See also Lambert v.
State*, 73 Wis.2d 590, 243 N.W.2d 524, 532 (1976).

[36] *Lutz v. Shelby Mutual Insurance*, 70 Wis.2d 743, 235 N.W.2d
426 (1975); *Willenkamp v. Keeshin Transport*, 23 Wis.2d 523,
127 N.W.2d 804 (1964). *See also* sec. 817.37, Stats.

The Town also contends that use of the Uniform Manual, *supra*, note 25, was prejudicial error. Upon review of the record, even though neither the Town nor Babl had a duty to post construction warning signs, we cannot say the trial court abused its discretion in permitting cross-examination concerning uniform construction warning signs.[37]

### Directed Verdict for Babl

Babl also moved for a directed verdict before the case was submitted to the jury and renewed its motion after the jury had attributed 5% of the causal negligence to Babl. The trial court then granted Babl's motion and dismissed the complaints as to Babl. Foss argues that the directed verdict was erroneous and the jury verdict should be reinstated. We affirm the dismissal of Babl.

From our holding above that the instructions based on secs. 86.01 and 86.022, Stats., were in error, it follows that Babl could not have breached such statutory duties. These statutes create no duty by Babl in light of the evidence most favorable to Foss. It remains to be determined whether Babl had a common law duty and, if so, whether any evidence other than mere conjecture tends to establish a breach of such duty.

Babl did dump several loads of fill over the embankment at the end of Nelson Road during a three-day period five months before the accident, but did not remove the barricade to facilitate such dumping, and did not undertake to replace the barricade. Babl had no contract with the Town for construction of an extension to Nelson Road. Foss argues Babl had a duty to inquire as to the ownership of the dumping site and elicited testimony that had Babl known the dumping site was a dedi-

---

[37] *See, e.g., Chart v. General Motors,* 80 Wis.2d 91, 258 N.W.2d 680, 684 (1977) ; sec. 904.03, Stats.

cated Town road it would have placed construction warning signs at the site. This argument is without merit.

Babl's acts or omissions having created no foreseeable or unreasonable risk of harm to others, we hold that, under the circumstances present here, Babl did not breach its duty of ordinary care.[38]

Babl not having breached its duty of ordinary care, therefore being not negligent, we sustain the trial court's order dismissing Foss's complaint as to Babl.

### Damages

The Town contends the jury's damage award should be reduced by the amount of the payments to Foss for her medical expenses under a group health and accident insurance policy. *Rixmann v. Somerset Public Schools*,[39] decided after trial, reaffirmed the collateral source rule and is controlling here.[40] Accordingly, the trial court properly refused to reduce the jury award.

*By the Court.*—Judgment and orders affirmed.

[38] *See Nelson v. L. & J. Press Corp.*, 65 Wis.2d 770, 223 N.W.2d 607, 614 (1975); *Padilla v. Bydalek*, 56 Wis.2d 772, 203 N.W.2d 15, 19 (1973); *University Dodge v. Drott Tractor Co.*, 55 Wis.2d 396, 198 N.W.2d 621, 622 (1972); *Meihost v. Meihost*, 29 Wis.2d 537, 139 N.W.2d 116 (1966); *Szep v. Robinson*, 20 Wis.2d 284, 121 N.W.2d 753 (1963); *Cf. Grube v. Moths*, 56 Wis.2d 424, 202 N.W.2d 261, 266 (1972) (failure to guard against bare possibility of injury is not actionable negligence). *See also Coffey v. Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132, 138 (1976) and cases cited therein.

[39] 83 Wis.2d 571, 266 N.W.2d 326 (1978).

[40] *See Merz v. Old Republic Insurance*, 53 Wis.2d 47, 191 N.W.2d 876 (1971); *Thoreson v. Milwaukee & Suburban Transport*, 56 Wis.2d 231, 201 N.W.2d 745 (1972).